WHISPERING HILLS COUNTRY CLUB, INC., Appellant,

v.

KENTUCKY COMMISSION ON HUMAN RIGHTS, Appellee.

WHISPERING HILLS COUNTRY CLUB, INC., George E. Buisson, Appellants,

v.

KENTUCKY COMMISSION ON HUMAN RIGHTS, Appellee.

Court of Appeals of Kentucky.

Jan. 21, 1972.

John B. Breckinridge, Atty. Gen., William B. Martin, Laura S. Murrell, Asst. Attys. Gen., Frankfort, Galen Martin, Executive Director, Thomas L. Hogan, Staff Atty., Ky. Comm. on Human Rights, James C. Hickey, Ewen, MacKenzie & Peden, Louisville, for appellee.

Thurston M. Crady, Robert P. Hastings, Hardy, Logan & Hastings, Louisville, for appellants.

EDWARD P. HILL, Jr., Judge.

These appeals are from a judgment upholding the validity of an order of the Kentucky Commission on Human Rights (herein referred to as the Commission) and from a contempt order for violation of the judgment.

Lieutenant James A. Armstead, a Negro army officer stationed at Fort Knox, Kentucky, attempted on September 24, 1969, to be admitted to a dance then in progress at the Whispering Hills Country Club, a corporation. He was refused admittance solely because he was a Negro. One of the requisites for membership in the club was that the applicant be a Caucasian.

On December 12, 1969, Armstead executed a formal complaint which he mailed to the Commission on December 17, 1969. The complaint was received on December 19, 1969.

On February 17, 1970, the appellee Commission mailed to the appellant, Whispering Hills Country Club (herein referred to as the Club), notice of a hearing it proposed to conduct on March 4, 1970. After the hearing on March 4, 1970, the Commission entered a cease and desist order requiring the Club to "cease and desist from the unlawful practices of discriminating against individuals because of race or color," and requiring it to "forthwith admit individuals, including the above-named Lt. James Armstead and other members of the Negro race."

Thereafter the Club filed this action in Jefferson Circuit Court pursuant to KRS 344.240, seeking to extricate the Club from the enforcement of the order of the Commission on a theory that it is a private club within the definition of KRS 344.130.

After a trial of the issues presented in this action, the chancellor on June 1, 1970, entered judgment upholding the March 4, 1970, order of the Commission. From this judgment the Club has appealed.

On February 19, 1971, after a hearing, the chancellor entered a judgment finding the Club in contempt of court and assessed a fine of $500 against it from which order of contempt the Club has appealed.

The two appeals have been consolidated, and we shall attempt to dispose of both appeals in this one opinion.

Appellant presents four grounds which it contends require reversal of the principal judgment: (1) It says the Commission and the circuit court should have dismissed the proceeding for failure of the Commission to comply with KRS 344.210(1), pertaining to the giving of notice to the Club; (2) it charges that it was denied due process of law by the Commission in that the investigative, evidentiary, and judicial functions of the Commission are not separated; (3) it charges the Commission with bias and prejudice which also resulted in denying it due process of law; and (4) it claims KRS 344.240 is "contrary to the laws of the courts of Kentucky for failure of the statute to provide for a de novo trial in circuit court."

Appellant's first argument is that the notice scheduling a hearing, given to it sixty-one days after the complaint was filed, was too late. It reasons that KRS 344.210(1) is mandatory and that when notice was not given within sixty days as required by the statute the complaint became stale, wherefore the Commission had no jurisdiction to proceed and the circuit court had no jurisdiction of the appeal.

The purpose of the statute in requiring notice within sixty days plainly is to encourage prompt action by the Commission, not to constitute a limitation on action by the Commission; therefore, delay in giving notice is not a basis for barring action on a complaint. The legislative intent is clearly shown in KRS 344.240(3), from which we quote the part pertaining to our question: "If the commission has failed to schedule a hearing in accordance

**648**

with KRS 344.210(1) * * * the complainant, respondent, Attorney General, or an intervenor may petition the circuit court * * * for an order directing the commission to take such action."

We come next to appellant's second argument which as we interpret it is that the statutes creating the Human Rights Commission are invalid and violative of the due-process clause of the Fourteenth Amendment to the Constitution of the United States because the investigative, evidentiary, and judicial functions of the Commission are not separated. A short answer to this argument may be found in Smith v. State Board of Accountancy of Kentucky, Ky., 271 S.W.2d 875, 876 (1954), from which we quote:

"As in similar proceedings before administrative bodies, it is obviously necessary that the Board make an investigation of complaints prior to presenting a formal charge of misconduct. To say that making such an investigation thereby disqualifies the Board is absurd. An administrative body would be derelict in its duties if it failed to conduct a preliminary investigation to determine if there was some sound basis for a proposed charge against a person over whom it had supervision. We find no merit in this contention."

See also Cooper, 1 State Administrative Law 342.

Appellant's third argument is that it was denied due process of law because the Commission and the hearing committee "clearly showed bias and partiality." It points out in this connection that two of the Commission members present at the hearing on March 7 were Negro; that one of the Negro members of the Commission had a "long standing affiliation with the NAACP as president, attorney, and lifetime member"; and that another member of the Commission present at the hearing was also a member of the NAACP, the Christian Leadership Conference, and the Kentucky Civil Liberties Union. It also complains the Commission "rendered its decision after short deliberation at the conclusion of the hearing," and that the hearing was conducted and the order entered by five of the "eleven members," three of whom were from Louisville, Kentucky.

Insofar as concerns the color or philosophies of the hearing commissioners, we simply say those matters, without other evidence, do not imply bias or prejudice. Being black nowadays would not violate the standards used to determine bias or prejudice. 1 Am.Jur.2d, Admr.Law, § 64, p. 860. Neither would the philosophies of the members favoring the enforcement of the civil rights statutes disqualify them or constitute bias or prejudice. The purpose of the statute is "to safeguard all individuals within the state from discrimination because of race, color, religion or national origin." The legislative purpose would be thwarted by a board composed of a majority that did not believe in the wisdom or constitutionality of the statute. Kentucky Milk Marketing and Anti-Monopoly Commission v. Borden Co., Ky., 456 S.W.2d 831 (1970). The shortness of the deliberation of the Commission is no indication of bias or prejudice. It might be a virtue. After all is said and done, the issue was simple and the facts virtually undisputed. The Commission required little time to decide the case. In fact, the appellant offered practically no evidence to support its defense to the complaint.

The statement by a member of the Commission relative to past decisions of the Commission in no way demonstrated bias or prejudice on the part of the members. National Labor Relations Board v. Pittsburgh Steamship Co., 337 U.S. 656, 69 S.Ct. 1283, 93 L.Ed. 1602 (1949).

Appellant complains of the interrogation of witnesses by various members present. We find this complaint wholly without merit. Regulation HR–2 2.070 adopted by the Commission provides that the commissioners "may call and examine

witnesses." The proposition that examining commissioners have an inherent right to question witnesses is so elementary and fundamental as to require no citation of authority. But in case some authority is demanded, it may be found in National Labor Relations Board v. Baldwin Locomotive Works, 3rd Circuit, 128 F.2d 39 (1942), and Bethlehem Steel Co. v. National Labor Relations Board, 74 App.D.C. 52, 120 F.2d 641 (1941).

Appellant's argument that the Commission lacked a quorum at the hearing must fail in the face of Article VI of the by-laws of the Commission, which states that "one less than a majority shall constitute a quorum for conducting all Commission business."

■ The fourth argument presented by appellant questions the legality of KRS 344.240 for failure to provide for a de novo trial in circuit court. Appellant relies on Osborne v. Bullitt County Board of Education, Ky., 415 S.W.2d 607, and Story v. Simpson County Board of Education, Ky., 420 S.W.2d 578, but they hold only that the legislature *may* provide for a de novo hearing on judicial review of a factual determination by an administrative agency. Cf. American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Commission, Ky., 379 S.W.2d 450.

This court follows the general rule found in 2 Am.Jur.2d Administrative Law § 697, from which we quote: "It is the general rule that in the absence of a statute so providing, a court is confined on review proceedings to the record made in the proceeding below, and may not hear new or additional evidence * * *." See also 1 Davis on Administrative Law Treatise § 29.07.

The answer to the appellant's argument is, then, that whether the reviewing court may or may not conduct a de novo hearing is for the legislature to decide.

The particular statute under consideration, KRS 344.240(4), does not provide for a de novo hearing. In fact subsection (4) provides "the court shall not consider any matter not considered by, nor any objection not raised before, the commission * * *. A party may move the court to remand the case to the commission in the interests of justice for the purpose of adducing additional specified and material evidence and seeking findings thereon * * *." "The findings of fact of the commission shall be conclusive unless clearly erroneous in view of the probative and substantive evidence on the whole record." (KRS 344.240(2)).

■ We next come to the question of the validity of the order finding the Club in contempt of court and which assessed a fine of $500. During the hearing on the motion that the Club be held in contempt of court, there was some evidence that one of the attorneys for the Club had advised his client, in good faith, that it could continue its practices pending an appeal even if it violated the judgment. Be that as it may, this question addressed itself to the sound discretion of the chancellor on the question of penalty. Admittedly the Club violated the clear provisions of the judgment.

It is neither here nor there that the appellants shortly before the contempt announced to the newspapers that the Club would thereafter be accepting Negroes as members and wrote a letter to that effect to the Fort Knox military complex. 17 C.J.S. Contempt § 38, p. 103.

■ The chancellor labeled the contempt as criminal. Both the appellant and the appellee agree that the contempt was civil in nature rather than criminal. Under the holding in Levisa Stone Corp. v. Hays, Ky., 429 S.W.2d 413 (1968), the contempt in the instant case was a civil contempt, and the chancellor had the power to impose a $500 fine without intervention of a jury.

Complaint is made of the action of the trial court in refusing a supersedeas of the order of contempt. Under the authority of the Levisa Stone case, the Club had the right of supersedeas, but it makes little difference now whether the appellant was permitted to supersede or was required to pay a fine. Whether the appellant paid the fine or superseded the order has nothing to do with the propriety of the order finding the appellant in contempt of court. In fact, he had another remedy of superseding in this court upon his inability to supersede in the ciruit court. CR 62.03 and 73.04.

We conclude that the order finding the appellants in contempt of court was fully justified by the evidence.

The principal judgment and the contempt order both are affirmed.