COMMONWEALTH Of Kentucky, CABINET FOR HUMAN RESOURCES, DEPARTMENT OF HEALTH SERVICES, Appellant

v.

John KANTER, d/b/a L & J Market, Appellee.

COMMONWEALTH Of Kentucky, CABINET FOR HUMAN RESOURCES, DEPARTMENT OF HEALTH SERVICES, Appellant

v.

Shirley ASKINS, d/b/a Askins Grocery, Appellee.

Nos. 94–CA–0539–MR, 94–CA–0540–MR.

Court of Appeals of Kentucky.

March 31, 1995.

Autumn F. Corns, Asst. Counsel, Dept. of Law, Frankfort, for Cabinet for Human Resources.

J.B. Johnson, Jr., Williamsburg, for appellees.

Before COMBS, JOHNSTONE and McDONALD, JJ.

*OPINION*

McDONALD, Judge.

The issue presented for consideration in this consolidated appeal is whether, as a matter of law, the trial court erred in voiding, on the basis of two constitutional grounds, the sanctions imposed by the Cabinet for Human Resources, Department of Health Services, ("Cabinet") against the appellees. We conclude the trial court erred in both instances.

The appellees, John Kanter d/b/a L & J Market, and Shirley Askins d/b/a Askins

Grocery, both participated as vendors in the Special Supplemental Food for Women, Infant and Children ("WIC") Program.[1] In order to qualify for participation in the Program, vendors must maintain a contractual agreement with the state. The contract mandates annual training for vendors regarding WIC Program procedures and requirements. Upon completion of the yearly training and continued compliance with the rules and regulations of the Program, vendor contracts are renewed. Kanter and Askins have both participated as vendors since 1983.

Pursuant to the contractual agreements between these vendors and the state, and as part of its administration of the Program, the Cabinet conducts routine investigations of vendors in which it undertakes a series of "compliance purchasing." To accomplish this, an investigator visits selected vendors throughout the state and makes various purchases at the stores in an effort to determine the vendors' degree of compliance with the Cabinet's regulations. Three visits to a particular store combine to constitute a "compliance buy." Following the visits, the investigator makes a report. Once the WIC vouchers are redeemed by the vendor, the Cabinet conducts a comparison examination of the two records. The comparison enables the Cabinet to assess what, if any, Program violations occurred.

In the present cases, an investigator visited each of the appellees' stores on three separate occasions: August 3, 1992; August 19, 1992; and September 10, 1992. During the course of the investigations it was determined that both vendors had violated the Program in the following three ways:

1) failing to enter the actual purchase price ("pay exactly") on the WIC voucher at the time of the purchase;

2) overcharging the program by charging more than the current retail market price for the food item purchased;

3) charging for foods not received at the time of the purchase.

By respective letters of December 7, 1992, and November 25, 1992, the Cabinet notified Kanter and Askins of the violations and proposed sanctions. Each vendor requested a hearing. Kanter's hearing was conducted on January 21, 1993. Askins' hearing was conducted on January 26, 1993. 7 CFR 246.9.

In Kanter's case, the hearing officer determined that all the alleged violations did, in fact, occur. The hearing officer found that an investigator, presenting food instrument (voucher) No. 7685534, purchased items at Kanter's store on August 3, 1992. In doing so, an overcharge, a failure to enter the "pay exactly" amount on the food instrument, and a failure to sign the instrument at the time of the transaction occurred. It was found that on August 19, the investigator again went to the store and used food instrument Nos. 7685535, 7685536, and 7685537. On this occasion, the clerk again failed to enter "pay exactly" amounts and sign the instruments at the time of the purchase, and again the Program was charged more than the current retail price. The officer found that on September 10, 1992, using food instrument No. 7685538, another "compliance buy" was made at Kanter's store. Again there was a failure to enter the "pay exactly" amount, a failure to sign the voucher at the time of the purchase, and an overcharge in the amount of 20¢. Additionally, it was determined that on this occasion the WIC Program was charged for authorized but unpurchased food items; namely, a gallon of whole milk and a box of cereal.

The hearing officer concluded that the sanctions imposed by the Cabinet were the appropriate ones mandated by 902 KAR

---

1. The Women, Infant and Children ("WIC") Program is a special supplemental food program designed to provide food to pregnant, breastfeeding and postpartum women, and infants and children (1–5 years of age). The Program is administered pursuant to 42 USC § 1786, the "Child Nutrition Act of 1966," as amended Pub.L. No. 103–448, 108 Stat. 4699 (1994), and 7 C.F.R. Part 246. To effect the Program at the state level, it is administered by the Cabinet for Human Resources, Department of Health Services, pursuant to the federal statutes, regulations and guidelines; KRS 194.050(1); and 902 KAR 4:040. Utilizing a system of vouchers which are presented by eligible participants to qualified vendors, the program provides the designated nutritional items to the WIC participants.

4:040 § 9 for the particular violations. Each commission of a particular violation during the course of the three visits was considered collectively to be only one offense for that particular violation. In Kanter's case, all the violations constituted first offenses. Thus, in the hearing officer's Findings of Fact, Conclusions of Law and Order Upholding Sanctions, issued on January 28, 1993, Kanter's store was disqualified from participating in the WIC Program for a period of one (1) year commencing February 12, 1993.

Regarding Askins' case, the hearing officer found that only two of the three claimed violations had occurred. It was determined Askins did not commit the alleged violation concerning charges for food not purchased. However, he found that Askins did, in fact, commit the violations concerning: 1) the failure to fill in the actual purchase price and sign the vouchers at the time of the transaction, and 2) overcharging the WIC Program by charging more than the current retail price for certain items purchased. The officer concluded that these acts constituted violations enumerated in 902 KAR 4:040 § 9. The precise sanctions for the respective violations in this case, which were both first offenses, were a written warning and a six (6)–month disqualification. Accordingly, these sanctions were upheld by order issued February 19, 1993, and Askins was disqualified from Program participation for a six (6)–month period commencing March 5, 1993.

In both instances the cases were appealed to the Whitley Circuit Court. Without specifically disturbing any of the factual determinations, the circuit court declared the sanctions imposed in the respective cases to be void and thus reversed the hearing officers' decisions and orders in each case. The basis for the reversal was the court's legal conclusions that: 1) 902 KAR 4:040 is unconstitutional because it violates § 2 of the Kentucky Constitution Bill of Rights as being arbitrary and capricious, and 2) Kanter and Askins were denied due process because the hearing officer and investigator are employed by the same office. The circuit court concluded that such delegation of investigatory function violates §§ 27 and 28 of the Kentucky Constitution concerning the doctrine of Separation of Powers. The Cabinet challenges both conclusions in this appeal.

■ The Kentucky Constitution provides as follows:

Section 27. The powers of the government of the Commonwealth of Kentucky shall be divided into three distinct departments, and each of them be confined to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.

Section 28. No person or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted.

*Legislative Research Commission v. Brown*, Ky., 664 S.W.2d 907 (1984), provides an historical overview of the separation of powers doctrine.[2] Therein our Supreme Court addressed the constitutionality of specific statutes conferring legislative power and authority to the Legislative Research Commission. The Court stated:

Unlike the federal constitution, the framers of Kentucky's constitution included an express separation of powers provision. They were undoubtedly familiar with the potential damage to the interests of the citizenry if the powers of government were usurped by one or more branches of that government.

. . . .

... [I]t has been our view, in interpreting Sections 27 and 28, that the separation of powers doctrine is fundamental to Kentucky's tripartite system of government and must be "strictly construed." (Citations omitted).

*Brown* at 911–12.

Reviewing earlier decisions, the *Brown* Court quoted as follows from *Bloemer v. Turner*, Ky., 281 Ky. 832, 137 S.W.2d 387, 390 (1940):

---

**2.** For an extensive analysis and discussion of the governmental scheme set up by the framers of the Kentucky Constitution *see Brown v. Barkley*, Ky., 628 S.W.2d 616 (1982).

[O]bviously the legislature cannot deal with subordinate rules or cover the details of administration and execution in its regulatory enactments. Perforce, these must be left to those upon whom the duty of carrying out the legislative will devolves. However, the legislature must lay down policies and establish standards. *Ibid.*

*Brown* at 915. The opinion continues:

Under *Bloemer,* the General Assembly cannot delegate its power to *make a law.* It can, however, establish standards for administration and delegate authority to implement a law....

The practical modification or exception developed in *Bloemer* was further explained and expanded in *Commonwealth v. Associated Industries of Kentucky,* Ky., 370 S.W.2d 584 (1963). The rule of that case is that Ky. Const. Sec. 29 does not absolutely prohibit the General Assembly's delegation of legislative power.

A more recent statement of the applicable principles is found in *Holsclaw v. Stephens,* Ky., 507 S.W.2d 462 (1974). In that case we stated:

... when we say that the legislature may not delegate its powers, we mean that *it may not delegate the exercise of its discretion as to what the law shall be, but not that it may not confer discretion in the administration of the law itself....* Generally speaking a *delegation of discretion* is not unlawful if sufficient standards controlling the exercise of that discretion are found in the act ... such as procedural safeguards *and* the right of the delegating authority to withdraw the delegation. 507 S.W.2d at 471. (Emphasis added.)

. It is clear from the aforementioned cases that delegation, of legislative power, to be lawful, must not include the exercise of discretion as to what the law shall be. In addition, such delegation must have standards controlling the exercise of administrative discretion. Finally, the delegating authority must have the right to withdraw the delegation.

*Ibid.*

■ The delegatory functions at issue are not, in our opinion, violative of Ky. Const.

Secs. 27–28. We disagree with appellees' contention that the regulatory scheme "concentrates too much control in one branch of government and therefore creates inherent bias in the process." The vendors were not deprived of due process because the hearing officer and investigator are employed by the same office. The scheme is not violative of the constitutional requirements and principles set forth in *Brown.*

The Kentucky courts have long held that the ability of an administrative agency to perform investigative and fact-finding functions and to administer the law does not violate due process. As related in *Danville Boyle County Planning and Zoning Commission v. Prall,* Ky., 840 S.W.2d 205 at 207 (1992):

An administrative body may utilize its staff which should be authorized to conduct preliminary investigation of the Commission's business. *Whispering Hills Country Club v. Ky. Com'n on Human Rights,* Ky., 475 S.W.2d 645 (1972).... The concept of constitutional due process in administrative hearings is flexible.

Our Supreme Court states that:

Where the statute adequately defines the prohibited conduct, administrative bodies may ascertain the facts and administer the law. [Citation omitted]. Such acts of administrative bodies are not an unconstitutional usurpation of judicial power where judicial review is available. [Citation omitted]. The combination of statutory guidelines as to prohibited conduct, availability of a due process hearing, and provisions for judicial review serve to circumscribe the agency's area of discretion within constitutional limits.

*Kentucky Commission on Human Rights v. Fraser,* Ky., 625 S.W.2d 852, 855 (1981). In *Smith v. Kentucky State Board of Accountancy,* Ky., 271 S.W.2d 875 (1954), the Court held that Smith, an accountant, was not denied due process of law nor prevented from having a fair hearing because the board investigated complaints against him, filed charges of violations against him, and then heard and "judged" or applied the law in his case. The present cases, like *Smith,* contain

nothing in the records to suggest or indicate that Kanter and Askins were not given full and fair hearings on the charges against them. The circuit court made no such determination in either case. In fact, quite to the contrary, the appellees readily admitted the violations for which each was ultimately sanctioned. Interestingly, in both cases the record reveals that the vendor specifically related he/she had no problem with the fact that the investigator and the hearing officer were employed by the same office. There was no per se violation of due process, and a review of each case makes it abundantly clear the appellees were afforded fair hearings and judicial review. *See also, Mountain Clay, Inc. v. Commonwealth, Commission on Human Rights,* Ky.App., 830 S.W.2d 395 (1992), and *Whispering Hills Country Club v. Kentucky Commission on Human Rights,* Ky., 475 S.W.2d 645 (1972).

The Cabinet for Human Resources is authorized by KRS 194.050 to adopt such rules and regulations as are necessary to implement programs mandated by federal law and to qualify for the receipt of federal funds. 42 USC § 1786, the "Child Nutrition Act of 1966," as amended Pub.L. No. 103–448, 108 Stat. 4699 (1994), and 7 C.F.R. 246 authorize grants for the WIC Program. The federal regulation mandates that the state agency establish policies which determine the type and level of sanctions to be applied against Program food vendors based upon the severity and nature of the Program violations observed and upon other facts the state agency determines appropriate. *See* 7 CFR 246.12. The federal regulation requires that certain enumerated vendor offenses shall be subject to sanctions. Included in the list of offenses that *shall* be subject to sanctions are the offenses of "charging the State or local agency for foods not received by the participant; and charging the State or local agency more for supplemental foods than other customers are charged for the same food item." 7 C.F.R. 246.12(k)(1).

The state regulations were promulgated as directed by the federal law. 902 KAR 4:040 sets out the application and participation process for the Kentucky WIC Program and includes the sanction and hearing process. Section 9 of the regulation provides that a six (6)–month disqualification shall be imposed on a vendor's first offense of overcharging, and that a one (1)–year disqualification shall be imposed for a vendor's first offense of charging for food not received.

 The regulation and the agency action under the circumstances presented in both of these cases satisfies the three-prong test enumerated in *American Beauty Homes Corporation v. Louisville and Jefferson County Planning and Zoning Commission,* 379 S.W.2d 450 (1964). As related therein, the court's role in judicial review of administrative decisions is to determine: 1) whether the action taken was in excess of granted powers; 2) whether the affected party was afforded procedural due process; and 3) whether there was a lack of substantial evidentiary support. *American Beauty Homes, supra* at 458. *See also, Commonwealth, Revenue Cabinet v. Liberty National Bank of Lexington,* Ky.App., 858 S.W.2d 199 (1993).

First, the action was not in excess of the agency's granted power. Secondly, there was not a lack of procedural due process. Finally, the evidence in each case clearly supported the determination that the violations occurred, which determination was admitted by each vendor and affirmed by the circuit court on appeal. *See also, Graybeal v. McNevin,* Ky., 439 S.W.2d 323 (1969).

 In both cases the investigation uncovered a pattern of Program violations resulting in overcharges to the Program. The procedures and regulations are in place specifically to prevent this from happening. Whether the overcharges are intentional or unintentional is irrelevant for the purposes of imposing the sanctions at issue. The vendor contracts specifically relate that no such distinction will be made for purposes of imposing sanctions for certain violations. All vendors receive extensive training in program procedures. The regulations, violations and sanctions are set forth in detail in each vendor contract. Kanter and Askins both acknowledged receiving training in all areas of Program procedure including violations of the Program and the applicable sanctions. The regulations apply equally to everyone

within the class and neither vendor argues he or she was treated differently. The Cabinet imposed the sanctions only after an investigation and a full hearing, wherein it was determined the violations at issue did in fact occur. Additionally, the vendors were afforded judicial review.

 The regulation that provides for mandatory sanctions for various violations of program procedures is not arbitrary or capricious. The Federal Government supplements, encourages and assists the WIC Program, which is vitally important to the community. The regulations are in place to benefit the public and maintain the integrity of the program. The sanctions become increasingly severe for second and third offenses. The imposition of mandatory sanctions does not exceed the scope of federal and state statutory authority. In fact, the regulation is in accordance with the federal law.

The appellees assert two final reasons why they were deprived of due process. First, they claim the sanction letters did not constitute proper notice. In support of this argument they contend: "[T]he vendor was never given notice of the first violation, but in lieu thereof, receives one letter informing him of all violations and disqualifying him from the program under the enhanced penalties of the regulation." This is simply not true. The record clearly refutes this mischaracterization of the notice and procedure utilized. The violations enumerated in the letters were treated as first offenses in all instances; neither vendor was sanctioned or penalized under the enhanced provisions for second- or third-time offenders.

Secondly, the appellees claim they lacked sufficient notice that disqualification from WIC would affect their authorization to participate in the Food Stamp Program. Again, contrary to their assertions, the record clearly refutes such claim. The cabinet provided the appellees explicit notice that the outcome of their cases could result in withdrawal of authorization to participate in the Food Stamp Program. In fact, the vendors were cited specifically to the federal regulation at issue, Section 278.1(n)(1).

The investigations and hearings, conducted pursuant to statutory and regulatory authority, in these cases were not violative of §§ 27 and 28 of the Kentucky Constitution and did not deprive the appellees of due process. The statutes and regulations at issue are not arbitrary and capricious. *See Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); *Jones v. Cabinet for Human Resources, Division for Licensure and Regulations,* Ky.App., 710 S.W.2d 862 (1986); *Brown, supra;* and *Fraser, supra.*

For all the foregoing reasons, the judgments of the Whitley Circuit Court are reversed and both cases are remanded for reinstatement of the respective decisions of the Cabinet upholding the sanctions against Kanter and Askins.

All concur.