**K & P GROCERY, INC., Appellant,**

v.

**COMMONWEALTH of Kentucky, Cabinet for Health Services, Department for Public Health, Appellees.**

No. 2001–CA–001616–MR.

Court of Appeals of Kentucky.

Aug. 30, 2002.

Case Ordered Published
Nov. 22, 2002.

Discretionary Review Denied
by Supreme Court May 15, 2003.

should help to avoid future omissions such as     the ones that occurred here.

John Paul Jones II, Monticello, KY, for Appellant.

Michael Deep, Frankfort, KY, for Appellee.

Before BARBER, COMBS, and JOHNSON, Judges.

## OPINION

COMBS, Judge.

K & P Grocery, Inc. (K & P), appeals from an order of June 28, 2001, of the Wayne Circuit Court affirming the administrative sanction imposed upon it by the Cabinet for Health Services (Cabinet). The Cabinet suspended K & P for three years from participating as a vendor in the Women, Infants and Children Program (WIC), a program designed to provide nutritious foods to low-income women and children. After a review of the record and the applicable legal authorities, we affirm.

The WIC program falls under the authority of the United States Department of Agriculture, which provides cash grants to states to administer the program. Eligible recipients obtain food at no cost from participating vendors by presenting vouchers that specify the kind and quantity of food that they can obtain. The vouchers are then redeemed by the vendors. In order to participate as a vendor, a retail grocer must make application, undergo screening, and complete a training course pertaining

to WIC policies and procedures. If approved, the vendor must execute a contract with the Cabinet agreeing to record the actual purchase price of the food items received by the participants on the voucher "prior to obtaining the signature of the participant." The regulations governing the program—including the sanctions for any violations—are attached to the vendor's contract.

K & P Grocery, Inc., owned by Dennis Lester, has participated for several years in the WIC program. On three separate dates in April of 2000, an employee of the Office of Inspector General posed as a WIC recipient at K & P to make undercover purchases known as "compliance buys" in the WIC regulations. On each visit, the investigator had a voucher that entitled her to receive various items, including milk, cereal, and eggs. However, on each visit to K & P, she did not purchase the eggs. The purchase price of those items obtained by the investigator was not recorded on the voucher at the time of purchase for any of the three visits. When the voucher was ultimately submitted for payment by K & P, the eggs had been charged against the program for redemption. In addition, on one of the vouchers, K & P charged the program an amount more than the shelf price of one of the items actually chosen by the investigator.

Pursuant to regulations promulgated by the Cabinet and provided to all WIC vendors, three instances of overcharging the program for food not received by the recipient suffice to trigger the three-year sanction. Accordingly, on June 16, 2000, the Cabinet notified the owner of K & P that the grocery would be disqualified from the WIC program for three years pursuant to 902 KAR[1] 4:040(12). The Cabinet also issued K & P a written warning for failing to record the actual pur-

chase price on the voucher at the time of purchase.

K & P did not challenge the propriety of the latter sanction. However, it requested a hearing to challenge the three-year suspension. At the hearing, Dennis Lester, the owner of K & P, admitted that he had overcharged the program, but he testified that the violations were inadvertent. The hearing officer sustained the Cabinet's sanctions and concluded that the regulations did not allow the Cabinet to mitigate its sanctions "even for unintentional violations." The circuit court affirmed, and this review followed.

■ K & P argues that the sanction should be reversed because 902 KAR 4:040 violates Section 2 of the Kentucky Constitution; *i.e.*, that it is arbitrary and capricious. In the first of its three arguments, K & P contends that the regulation is void because it fails to distinguish between intentional and inadvertent violations by a vendor. In addressing this same argument, the Wayne Circuit Court cited extensively from *Commonwealth, Cabinet for Human Resources v. Kanter*, Ky.App., 898 S.W.2d 508, 513 (1995), where this court held that regardless of whether the violations are "intentional or unintentional," the very occurrence of the violation alone suffices to justify imposing sanctions.

The facts in *Kanter, supra*, are nearly identical to those in the case before us, and the legal reasoning of that case remains applicable. K & P does not cite or attempt to distinguish *Kanter* in its brief. It simply emphasizes the arbitrariness inherent in the Cabinet's failure to "differentiate between premeditated actions of fraud and mere mistake." We disagree.

■ "Arbitrariness" arises when an agency: (1) rendered a decision on less

---

1. Kentucky Administrative Regulations.

than substantial evidence, (2) failed to afford procedural due process to an affected party, or (3) exceeded its statutory authority. *See, Kentucky Board of Nursing v. Ward,* Ky.App., 890 S.W.2d 641, 642 (1994). There are no disputed facts with respect to the quantum of evidence as Lester admitted to overcharging the program on all three compliance buys. Nor does K & P complain about the due process that it received. Thus, any arguable arbitrariness must rest upon the argument as to statutory authority: either on the Cabinet's lack of authority to enforce its regulation or even more basically on its authority to promulgate the regulation in the first place.

KRS [2] 194A.050(1) authorizes the Cabinet to promulgate regulations necessary to administer the WIC program. The federal regulations pertaining to the WIC program have developed a scheme of escalating sanctions for vendor violations ranging from a one-year suspension to a permanent disqualification from the program—depending on the seriousness of the violation. Pursuant to the federal regulations [3], the Cabinet is required to disqualify a vendor from the program for three years if it displays a pattern of overcharging the state or of charging for food not received by the participant. Thus, the federal government treats overcharging the program for food as a very serious violation. We observe that the Cabinet was empowered both by statute and by federal regulations to define and to determine the so-called pattern that would trigger the sanctions mandated by the federal government.

We find no arbitrariness in the enforcement of the regulation. Whether a violation occurs as the result of an intentional act or of neglect on the part of a cashier to record the items in timely fashion, the effect is the same under the criteria and rules of the WIC program. Any improper amount—even an admittedly small amount as is at issue here—diminishes the funds available to feed needy women and children. It may be a rigid standard accounting-wise, but it is not arbitrary in the legal sense of the term to hold vendors strictly liable for violations that involve a diminution of funds. Contrary to K & P's persuasive reasoning, we cannot agree that it was arbitrary for the Cabinet to find a pattern in the three instances of overcharging during the three compliance buys so as to activate the penalty mechanism. Thus, the three-year disqualification from the program was not improperly imposed.

■ Next, K & P alleges that because the regulation under which it was sanctioned was written by a vendor committee instead of by the Cabinet, it is consequently null and void. This argument is based upon the testimony of Ruthanne Boyles, a Cabinet employee, who described the process used by the Cabinet in promulgating regulations pertaining to WIC vendors. She testified that a work group (of which she was a member) decided how many instances of overcharging should comprise a pattern for purposes of applying the sanctions mandated by the federal regulations. Boyles described the membership of the work group as follows:

> We had representatives from independent chain stores, from major chains, from small, independent mom and pop type stores. We had representatives from the Kentucky Grocers Association, Kentucky Retail Federation, as well as a legislator, plus people from the Cabinet[.]

2. Kentucky Revised Statutes.

3. Title 7, Code of Federal Regulations (CFR) Part 246.12(k) (1)(iii)(C) and (E)(April, 2000 edition).

Without a doubt, KRS 194A.050 places the responsibility on the *Cabinet* to promulgate the regulations for monitoring the WIC program. However, Boyles's testimony indicates that the Cabinet acted appropriately during its rule-making phase in seeking comments from legislators, members of the public, and associations affected by its intended regulations. *See* KRS Chapter 13A. We cannot agree with K & P's characterization of this process of seeking public in-put as being tantamount to the Cabinet's abrogation or improper delegation of its duties. The vendor committee was rationally comprised of members who served as a valuable tool for the Cabinet.

 K & P further argues that the regulation is arbitrary and void because the Cabinet does not investigate all participants in the WIC program but rather "focuse[s] on small vendors." However, the evidence in the record reveals that the Cabinet investigates major food chains as well as small vendors like K & P. From the face of this record, we have been unable to discover the kind of disparity alleged by K & P as to the types of vendors that the Cabinet investigates.

 Finally, K & P attacks the finding of the hearing officer that its WIC customers would not suffer inadequate access to the WIC program if the three-year suspension of K & P were upheld. K & P bases this argument on insufficiency of the evidence to support the conclusion. Dennis Lester testified that his store provided special-order items for its WIC customers; he contends in his brief that he rather than the Cabinet "would be in the better position to know" whether his customers would be disadvantaged by the imposition of the sanctions.

 While surely there is some merit to his belief, Mr. Lester's personal conviction cannot refute the other evidence so compellingly as to permit us to disturb the sanctions imposed by the Cabinet. Evidence was presented at the hearing indicating that there were at least four other WIC vendors within one mile of K & P— evidence which supports the finding that the WIC participants in that area would not be adversely affected. Concededly, the evidence was conflicting, but it is within the considerable discretion of the hearing officer to pass on the credibility of the witnesses and to determine the weight to be afforded the evidence. *Energy Regulatory Commission v. Kentucky Power Co.,* Ky.App., 605 S.W.2d 46 (1980).

The order of the Wayne Circuit Court is affirmed.

ALL CONCUR.