RENDERED: APRIL 30, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1587-WC

WEBSTER COUNTY COAL, LLC                    APPELLANT

v.           PETITION FOR REVIEW OF A DECISION
OF THE WORKERS' COMPENSATION BOARD
ACTION NOS. 17-WC-94604, 18-WC-01335,
AND 18-WC-01336

DAVID SEXTON; TONYA
MICHELLE CLEMONS,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION
BOARD                                     APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; DIXON AND MAZE, JUDGES.

DIXON, JUDGE: Webster County Coal petitions for review of the Workers'

Compensation Board (Board) opinion entered November 25, 2020, affirming the

opinion, award, and order entered July 3, 2020, by Administrative Law Judge

(ALJ) Jeff V. Layson, III and order on reconsideration by ALJ Tonya M. Clemons. Following review of the record, briefs, and law, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

On February 6, 2017, David Sexton was employed by Webster County Coal as a mechanic roper performing underground maintenance. He was driving an underground vehicle, traveling at approximately seven to eight miles per hour, when he collided with the continuous miner machinery he was en route to repair. He pried the steering wheel of his vehicle up and attempted to get out. He fell to the ground; however, his left foot remained wedged under the brake pedal. Sexton was transported from the scene of the accident to a local emergency room where he complained of neck, back, chest, and lower left extremity pain. He underwent physical therapy and eventually had left foot surgery. Following the surgery, Sexton developed two blood clots, as well as complex regional pain syndrome (CRPS).

Sexton filed multiple workers' compensation claims, which were later consolidated in this action. After a formal hearing was held, the ALJ entered a meticulous and comprehensive 22-page opinion, award, and order finding Sexton permanently and totally disabled and awarding him permanent income and medical benefits. Webster County Coal petitioned the ALJ to reconsider the opinion, award, and order. On July 31, 2020, the ALJ entered a six-page, single-spaced

order on reconsideration denying "all issues except for omission of identification of evidence contradicting medical treatment and a typographical error[.]" Thereafter, Webster County Coal appealed to the Board. On November 25, 2020, the Board entered a 16-page opinion affirming the ALJ, and this petition for review followed.

## STANDARD OF REVIEW

The appropriate standard of review for workers' compensation claims was summarized in *Bowerman v. Black Equipment Company*, 297 S.W.3d 858, 866-67 (Ky. App. 2009).

> Appellate review of any workers' compensation decision is limited to correction of the ALJ when the ALJ has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice. *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992). Our standard of review differs in regard to appeals of an ALJ's decision concerning a question of law or a mixed question of law and fact *vis-à-vis* an ALJ's decision regarding a question of fact.
>
> The first instance concerns questions of law or mixed questions of law and fact. As a reviewing court, we are bound neither by an ALJ's decisions on questions of law or an ALJ's interpretation and application of the law to the facts. In either case, our standard of review is *de novo*. *Carroll v. Meredith*, 59 S.W.3d 484, 489 (Ky. App. 2001); *Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky. App. 1998). *De novo* review allows appellate courts greater latitude in reviewing an ALJ's decision. [*Purchase Transp. Servs. v. Estate of Wilson,* 39 S.W.3d

816, 817-18 (Ky. 2001); *Uninsured Emp'rs' Fund v. Garland*, 805 S.W.2d 116, 117 (Ky. 1991)].

The second instance concerns questions of fact. [Kentucky Revised Statutes (KRS)] 342.285 designates the ALJ as finder of fact, and has been construed to mean that the factfinder has the sole discretion to determine the quality, character, weight, credibility, and substance of the evidence, and to draw reasonable inferences from the evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985); [*McCloud v. Beth-Elkhorn Corp.*, 514 S.W.2d 46, 47 (Ky. 1974)]. Moreover, an ALJ has sole discretion to decide whom and what to believe, and may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof. *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky. 1977).

KRS 342.285 also establishes a "clearly erroneous" standard of review for appeals concerning factual findings rendered by an ALJ, and is determined based on reasonableness. *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986). Although an ALJ must recite sufficient facts to permit meaningful appellate review, KRS 342.285 provides that an ALJ's decision is "conclusive and binding as to all questions of fact," and that the Board "shall not substitute its judgment for that of the [ALJ] as to the weight of evidence on questions of fact[.]" *Shields v. Pittsburgh & Midway Coal Mining Co.,* 634 S.W.2d 440, 441 (Ky. App. 1982). In short, appellate courts may not second-guess or disturb discretionary decisions of an ALJ unless those decisions amount to an abuse of discretion. [*Medley v. Bd. of Educ., Shelby Cty.*, 168 S.W.3d 398, 406 (Ky. App. 2004)]. Discretion is abused only when an ALJ's decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Downing v. Downing*, 45 S.W.3d 449, 454 (Ky. App. 2001).

. . .

> Generally, "arbitrariness" arises when an ALJ renders a decision on less than substantial evidence, fails to afford procedural due process to an affected party, or exceeds her statutory authority. [*K & P Grocery, Inc. v. Commonwealth, Cabinet for Health Servs.*, 103 S.W.3d 701, 703 (Ky. App. 2002)].

Substantial evidence is "that which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." *Bowling v. Nat'l Res. & Envt'l Prot. Cabinet*, 891 S.W.2d 406, 409 (Ky. App. 1994). Our standard of review requires we show considerable deference to the ALJ and the Board.

## LUMBAR INJURY

Webster County Coal first argues the ALJ erred in finding that Sexton sustained a lumbar injury during the February 6, 2017, work-related incident. Webster County Coal claims the evidence does not support such a finding; Sexton's initial treatment records do not contain lumbar spine complaints; a subsequent MRI of Sexton's lumbar spine only showed degenerative rather than acute changes; and Sexton had a significant pre-existing thoracolumbar orthopedic injury from 2013.

These arguments were addressed by the ALJ in the order on reconsideration. The ALJ noted that Webster County Coal stipulated to the work-related injury on February 6, 2017, at the final hearing and did not move to set

-5-

aside that stipulation. Thus, the ALJ correctly found the parties and the ALJ are bound by the stipulation. *Osborne v. Pepsi-Cola*, 816 S.W.2d 643, 644 (Ky. 1991) (citing *Wagoner v. Hopkins*, 531 S.W.2d 511 (Ky. 1975)).

Also, in the order on reconsideration, the ALJ found, in addition to the stipulation, the prior ALJ explicitly adopted the medical opinions of Dr. William A. Ante—one of Sexton's treating physicians—and Dr. Jeffrey A. Uzzle—who conducted an Independent Medical Evaluation (IME) of Sexton—in finding a work-related low back injury in the opinion, award and order. Medical records from Dr. Ante were introduced into evidence, and he was deposed on January 22, 2020. Dr. Ante testified that Sexton "had complaints of back pain as a result of the work injury. He denied any consistent back pain prior to that work injury and has had consistent back pain and related symptoms since then." Dr. Ante's records and testimony provide a causal link between Sexton's current back pain and this accident. Dr. Uzzle's report dated October 27, 2018, following the IME was also made part of the record. The report specifically noted Sexton's prior back injury in 2013, but also attributed Sexton's current back pain to this accident. Dr. Uzzle opined that the prior injury had resolved and Sexton's "chronic low back pain has been aggravated by this 2/6/17 work injury." Additional medical records were provided from the date of the accident indicating a back injury, including a lumbar CT with a history reading, "Mining accident. Back injury, initial encounter.

-6-

Thoracic spine pain. Lumbar spine pain." Accordingly, the Board correctly determined the ALJ acted within his authority in finding that Sexton sustained a back injury from this accident. This finding is supported by substantial evidence and will not be disturbed.

**COMPLEX REGIONAL PAIN SYNDROME (CRPS)**

Webster County Coal next argues the ALJ erred in finding Sexton has CRPS based on Drs. Ante's and Uzzle's opinions, claiming they were either not based on the AMA *Guides*[1] or not based on the correct version of the AMA *Guides*. Under KRS[2] 342.0011(35) and KRS 342.0011(37), impairment ratings in workers' compensation cases for physical injuries are determined by the Fifth Edition of the AMA *Guides*.

Although Dr. Uzzle mentioned and referred to the Sixth Edition of the AMA *Guides* in his report, he specifically stated that he utilized the Fifth Edition in assigning Sexton's impairment ratings, including the impairment rating for CRPS. Dr. Ante only referenced the Fifth Edition in his reports, dated September 18, 2019, and October 6, 2019, assigning Sexton's impairment ratings for his disabilities, including CRPS. Thus, Webster County Coal's argument that these

---

[1] *Guides to the Evaluation of Permanent Impairment*, Fifth Edition, Linda Cocchiarella & Gunnar B. J. Anderson, American Medical Association (AMA Press 2000).

[2] Kentucky Revised Statutes.

findings are not in accordance with the AMA *Guides*, and by extension fail to constitute substantial evidence, is without merit.

We further note the case herein is factually distinguishable from *Jones v. Brasch-Barry General Contractors*, 189 S.W.3d 149, 153 (Ky. App. 2006), which Webster County Coal cites in its argument. In *Jones*, the doctor's findings were not in accordance with the AMA *Guides*, as that doctor assigned a much higher impairment rating for the condition than provided for by the AMA *Guides*. Here, the impairment ratings were based on and in line with the appropriate version of the AMA *Guides*, and the ALJ was entitled to rely upon them.

## PERMANENT TOTAL DISABILITY (PTD)

Under Kentucky's Workers' Compensation Act,[3] "'Permanent total disability' means the condition of an employee who, due to an injury, has a permanent disability rating and has a complete and permanent inability to perform any type of work as a result of an injury[.]" KRS 342.0011(11)(c). "'Work' means providing services to another in return for remuneration on a regular and sustained basis in a competitive economy[.]" KRS 342.0011(34).

Here, the ALJ clearly complied with the law as set forth in *City of Ashland v. Stumbo*, 461 S.W.3d 392 (Ky. 2015). In that case, the Court held:

> an ALJ is required to undertake a five-step analysis in order to determine whether a claimant is totally disabled.

---

[3] KRS Chapter 342.

Initially, the ALJ must determine if the claimant suffered a work-related injury. Here, the parties stipulated that Stumbo suffered a work-related injury; therefore, the ALJ was not required to make that finding. Next, the ALJ must determine what, if any, impairment rating the claimant has. Here, the ALJ listed the various impairment ratings assigned to Stumbo by the physicians. However, the ALJ never found which impairment rating Stumbo actually has. Having failed to determine what impairment rating Stumbo has, the ALJ could not then determine what permanent disability rating Stumbo has. Thus, the ALJ failed to satisfy the second and third steps of the analysis. Next, an ALJ is required to determine that the claimant is unable to perform any type of work. Here, the ALJ attempted to undertake this analysis, but, as noted by the Board and the Court of Appeals, he fell short. An ALJ cannot simply state that he or she has reviewed the evidence and concluded that a claimant lacks the capacity to perform any type of work. The ALJ must set forth, with some specificity, what factors he or she considered and how those factors led to the conclusion that the claimant is totally and permanently disabled. Such findings are particularly crucial in a case such as this where: part of Stumbo's condition and arguably some of his restrictions are related to his pre-existing antiphospholipid syndrome; Stumbo testified he could perform sedentary work with accommodations; no physician imposed any restrictions that would foreclose Stumbo from performing sedentary work; Stumbo has performed a wide-range of work activity; and Stumbo has obtained 90 hours of college credits. Finally, an ALJ must determine that the total disability is the result of the work injury.

*Id.* at 396-97. These five factors are the same as those in *Ira A. Watson Dep't Store v. Hamilton*, 34 S.W.3d 48 (Ky. 2000), mentioned by Webster County Coal.

Additionally, in *Arnold v. Toyota Motor Manufacturing*, 375 S.W.3d

56, 61-62 (Ky. 2012), the Court held:

> Mindful that Chapter 342 and the Kentucky Constitution require review of decisions in post-1987 workers' compensation claims by the Board, the Court of Appeals, and the Supreme Court, when requested, we conclude that KRS 342.275(2) and KRS 342.285 contemplate an opinion that summarizes the conflicting evidence concerning disputed facts; weighs that evidence to make findings of fact; and determines the legal significance of those findings. Only when an opinion summarizes the conflicting evidence accurately and states the evidentiary basis for the ALJ's finding does it enable the Board and reviewing courts to determine in the summary manner contemplated by KRS 342.285(2) whether the finding is supported by substantial evidence and reasonable.

(Footnotes omitted). Webster County Coal contends the ALJ failed to set forth the

legal significance of his findings concerning Sexton's inability to return to work.

> This argument is refuted by the Board, which opined:

> The ALJ explained the five-step process required to support his determination of permanent total disability. He found Sexton sustained compensable work-related injuries. He next determined Sexton has a 35% impairment rating based upon Dr. Ante's assessment. The ALJ next translated the impairment rating to a disability rating in accordance with KRS 342.730. **The ALJ next determined Sexton is unable to perform any work. He specifically noted that even Dr. Lyon conceded Sexton is limited to sedentary work. We note that Dr. Lyon's concession on this point is the only medical evidence indicating Sexton, an underground coalminer, could perform any activities. Despite that concession, Dr. Lyon opined Sexton is unable to return to his previous work. Based upon**

-10-

**the evidence, the ALJ determined Sexton's inability to work is due to the residual limitations from his work injuries.**

(Emphasis added). Based on our review of the ALJ's opinion, award, and order, we agree with the Board's characterization of same. We further note the ALJ also found "Sexton credibly testified that he is not particularly computer literate and there is no evidence that he has any experience or transferrable skills which would qualify him for any type of sedentary gainful employment," and "Sexton testified that his post-injury medications have adversely affected his memory." The ALJ concluded the fact Sexton "cannot walk, stand or climb for any substantial period of time or on a regular and continuous basis make[s] him unemployable."

The case herein is distinguishable from the unpublished case of *Richmond v. Masco Building Cabinet Group*, No. 2013-CA-1733-WC, 2014 WL 6696665 (Ky. App. Nov. 26, 2014), where "the ALJ's opinion [was] conclusory, merely listing facts on which he relied without explanation concerning their occupational significance vis-à-vis his ultimate legal determination of PTD." *Id.* at *5. As an unpublished case, we need not discuss this case further. Even so, here, although the ALJ may have minced words, there is no doubt as to the relevant facts which support the finding that Sexton is unable to work, nor is there any doubt as to their legal significance.

-11-

Nevertheless, Webster County Coal asserts the ALJ's finding that Sexton is permanently and totally disabled is not supported by Kentucky case law, namely *Osborne v. Johnson*, 432 S.W.2d 800 (Ky. 1968). Ironically, *Osborne* indeed supports the ALJ's findings. It held, "If the board finds that the workman is so physically impaired that he is not capable of performing any kind of work of regular employment . . . the man will be considered to be totally disabled." *Id.* at 803. Here, the ALJ found Sexton's inability to "walk, stand or climb for any substantial period of time or on a regular and continuous basis make[s] him unemployable." This finding makes Sexton permanently and totally disabled as a matter of Kentucky law under both the Act and applicable case law.

We further agree with the Board herein that "[t]he ALJ appropriately outlined the steps necessary, and outlined the evidence he relied upon in reaching his determination. The ALJ properly analyzed the claim, and his decision falls squarely within his discretion. Therefore, his determination on this issue will remain undisturbed."

## CONCLUSION

For the foregoing reasons, the Opinion of the Workers' Compensation Board is AFFIRMED.


ALL CONCUR.

BRIEF FOR APPELLANT:

Brandy B. Hassman
Lexington, Kentucky

BRIEF FOR APPELLEE DAVID
SEXTON:

McKinnley Morgan
London, Kentucky