RENDERED: SEPTEMBER 9, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0443-WC

CLARIANT CORPORATION                                 APPELLANT

|                  | PETITION FOR REVIEW OF A DECISION          |
|------------------|--------------------------------------------|
| v.               | OF THE WORKERS' COMPENSATION BOARD         |
|                  | ACTION NO. WC-20-95996                     |

BRADLEY EVERETT; HONORABLE
GRANT S. ROARK,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION
BOARD                                           APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; COMBS AND DIXON, JUDGES.

DIXON, JUDGE: Clariant Corporation (Clariant) petitions for review of the

Workers' Compensation Board (Board) opinion entered March 25, 2022, affirming

the opinion, award, and order entered October 25, 2021, by the administrative law

judge (ALJ), and his order on reconsideration. Following review of the record, briefs, and law, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Bradley Everett began working for Clariant in 1986. In 2015, he became a shift leader and spent most of his 12-hour workdays walking the large, multi-level plant to supervise. Everett also performed administrative tasks such as scheduling, planning, and placing orders.

On January 26, 2020, Everett was attempting to pass through a doorway when the toe of his boot caught the metal lip of its threshold. He heard the bones in his left leg break as it twisted and lowered himself to the ground. Everett radioed maintenance personnel and was transported by ambulance to a local hospital for treatment. The next day, Dr. Carl Kure performed surgery on Everett's leg, and he was released the following day.

Everett followed up with Dr. Kure and returned to his same position at work with restrictions on April 12, 2020. Clariant provided accommodations for Everett, including temporary use of a golf cart. On July 21, 2020, Dr. Kure cleared Everett of all restrictions.

On September 15, 2020, Everett was terminated from his employment with Clariant. Everett claims he was not given much information as to why he was

let go, but he suspected it was partly due to a disagreement he had with another employee and partly due to his injury.

Everett sought workers' compensation benefits and was deposed as part of his claim. Everett testified he had difficulty performing his job after his injury because of the amount of walking, standing, and climbing stairs required. He was unsure if he could perform the job of Clariant shift supervisor without the assistance previously provided to him. Everett testified that he still experiences pain in his left leg. He further testified that he obtained employment after his termination with Clariant working both as a driver for the Forum at Brookside, an assisted living community, and part-time as an Uber driver; yet, he made significantly less money than at Clariant.

Everett underwent an Independent Medical Evaluation (IME) conducted by Dr. Stacie L. Grossfeld. Dr. Grossfeld found Everett has "limited [range of motion] of his left ankle with some gastroc soleus atrophy on the left lower extremity." She assigned him a 6% whole person permanent partial impairment rating from the combined values for gastroc soleus atrophy of 3% and loss of range of motion of his ankle of 3% based on the American Medical

Association (AMA) *Guides*.[1]  Dr. Grossfeld opined Everett required no permanent work restrictions and no further medical treatment.

Everett also underwent an IME performed by Dr. James Farrage.  Dr. Farrage observed no evidence of malingering or symptom magnification.  Dr. Farrage also opined Everett "can stand and walk for up to two hours at a time with allowance for frequent changes in position and the ability to intermittently elevate the leg.  He can negotiate a flight of stairs on occasion."  Even so, Dr. Farrage stated Everett "does retain the physical capacity to return to his previous job description."  Ultimately, Dr. Farrage assigned Everett a 4% whole person impairment rating from the combined values for plantar dorsiflexion impairment of 3% and eversion impairment of 1% based on the AMA *Guides*.

A final hearing was held at which Everett testified consistently with his prior deposition testimony.  On October 25, 2021, the ALJ entered his opinion, order, and award in which he found Everett to be permanently partially disabled with a 6% impairment rating and awarded him the three-multiplier pursuant to KRS[2] 342.730(1)(c)1.  Clariant petitioned the ALJ to reconsider his opinion, order, and award.  The ALJ determined that his previous finding that Everett earned the

---

[1]  American Medical Association's *Guides to the Evaluation of Permanent Impairment*, Fifth Edition.

[2]  Kentucky Revised Statutes.

same or greater wages after his injury when he returned to work was erroneous but did not affect any calculations or the award of benefits. Clariant then appealed to the Board. The Board ultimately affirmed the ALJ, and this petition for review followed.

## STANDARD OF REVIEW

The appropriate standard of review was summarized in *Bowerman v. Black Equipment Company*, 297 S.W.3d 858, 866-67 (Ky. App. 2009).

> Appellate review of any workers' compensation decision is limited to correction of the ALJ when the ALJ has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice. [*W.*] *Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992). Our standard of review differs in regard to appeals of an ALJ's decision concerning a question of law or a mixed question of law and fact *vis-à-vis* an ALJ's decision regarding a question of fact.
>
> The first instance concerns questions of law or mixed questions of law and fact. As a reviewing court, we are bound neither by an ALJ's decisions on questions of law or an ALJ's interpretation and application of the law to the facts. In either case, our standard of review is *de novo*. *Carroll v. Meredith*, 59 S.W.3d 484, 489 (Ky. App. 2001); *Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky. App. 1998). *De novo* review allows appellate courts greater latitude in reviewing an ALJ's decision. [*Purchase Transp. Servs. v. Est. of Wilson*, 39 S.W.3d 816, 817-18 (Ky. 2001); *Uninsured Emps.' Fund v. Garland*, 805 S.W.2d 116, 117 (Ky. 1991)].
>
> The second instance concerns questions of fact. KRS 342.285 designates the ALJ as finder of fact, and has

been construed to mean that the factfinder has the sole discretion to determine the quality, character, weight, credibility, and substance of the evidence, and to draw reasonable inferences from the evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985); [*McCloud v. Beth-Elkhorn Corp.*, 514 S.W.2d 46, 47 (Ky. 1974)]. Moreover, an ALJ has sole discretion to decide whom and what to believe, and may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof. *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky. 1977).

KRS 342.285 also establishes a "clearly erroneous" standard of review for appeals concerning factual findings rendered by an ALJ, and is determined based on reasonableness. *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986). Although an ALJ must recite sufficient facts to permit meaningful appellate review, KRS 342.285 provides that an ALJ's decision is "conclusive and binding as to all questions of fact," and that the Board "shall not substitute its judgment for that of the [ALJ] as to the weight of evidence on questions of fact[.]" *Shields v. Pittsburgh & Midway Coal Mining Co.*, 634 S.W.2d 440, 441 (Ky. App. 1982). In short, appellate courts may not second-guess or disturb discretionary decisions of an ALJ unless those decisions amount to an abuse of discretion. [*Medley v. Bd. of Educ., Shelby Cty.*, 168 S.W.3d 398, 406 (Ky. App. 2004)]. Discretion is abused only when an ALJ's decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Downing v. Downing*, 45 S.W.3d 449, 454 (Ky. App. 2001).

. . . .

Generally, "arbitrariness" arises when an ALJ renders a decision on less than substantial evidence, fails to afford procedural due process to an affected party, or exceeds

her statutory authority.  [*K & P Grocery, Inc. v. Commonwealth, Cabinet for Health Servs.*, 103 S.W.3d 701, 703 (Ky. App. 2002)].

Substantial evidence is "that which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." *Bowling v. Nat. Res. & Env't Prot. Cabinet*, 891 S.W.2d 406, 409 (Ky. App. 1994).  Our standard of review requires we show considerable deference to the ALJ and the Board.

## ANALYSIS

Clariant's sole argument on appeal is that the ALJ erred by applying a three-multiplier to Everett's award.  Concerning application of the three-multiplier, KRS 342.730(1)(c)1. provides the framework for our review:

> If, due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury, the benefit for permanent partial disability shall be multiplied by three (3) times the amount otherwise determined under paragraph (b) of this subsection[.]

Clariant insists the ALJ erred in applying the three-multiplier contending there is no evidence Everett lacked the physical capacity to do the type of work he was performing when his employment at Clariant was terminated.

The Supreme Court of Kentucky, in *Ford Motor Company v. Forman*, 142 S.W.3d 141, 145 (Ky. 2004), held that in cases concerning the applicability of the three-multiplier, ALJs "must analyze the evidence to determine what job(s) the

claimant performed **at the time of injury** and to determine **from the lay and medical evidence** whether [he or] she retains the physical capacity to return to those jobs." (Emphasis added.) Here, Everett's testimony, coupled with Dr. Farrage's opinion, supports application of a three-multiplier because Everett's pre-injury job was more strenuous than he can now perform. He cannot spend most of a 12-hour shift walking, standing, and climbing flights of stairs as he formerly did.

The case herein, however, presents an unusual situation in that Everett stopped working at Clariant because it terminated his employment. Nevertheless, the pivotal inquiry is not the reason Everett stopped working but whether he retains the capacity to perform his prior employment. Further, we agree with the Board's conclusion that the ALJ was free to accept Everett's testimony as to his inability to perform his previous work for Clariant, in addition to accepting Dr. Farrage's opinions concerning Everett's limitations as impeding his prior employment.

It was not necessary for Dr. Farrage to state that Everett "does ___**not**___ retain the physical capacity to return to his previous job description." The ALJ acknowledged in his order on petition for rehearing that Dr. Farrage, in fact, opined that Everett "___*does*___ retain the physical capacity to return to his previous job description." (Emphasis added.) However, the ALJ pointed out that Dr. Farrage noted Everett's inability to walk or stand for prolonged periods of time. This, coupled with Everett's credible testimony that he continued to experience

symptoms in his left leg, supported the ALJ's decision that Everett could no longer perform his pre-injury job. Considering Dr. Farrage's description of what Everett could no longer do compared to the description of what he was required to do, as well as Everett's own testimony on his limitations, it was not unreasonable for the ALJ to determine Everett could no longer perform his pre-injury employment.

> As explained in *Ira A. Watson Department Store v. Hamilton*:
>
> Although the ALJ must necessarily consider the worker's medical condition when determining the extent of his occupational disability at a particular point in time, **the ALJ is not required to rely upon the vocational opinions of either the medical experts or the vocational experts**. *See*, [*Eaton Axle Corp. v. Nally*, 688 S.W.2d 334 (Ky. 1985); *Seventh St. Rd. Tobacco Warehouse v. Stillwell*,] 550 S.W.2d 469 (Ky. 1976). **A worker's testimony is competent evidence of his physical condition and of his ability to perform various activities both before and after being injured**. [*Hush v. Abrams*, 584 S.W.2d 48 (Ky. 1979)].

34 S.W.3d 48, 52 (Ky. 2000) (emphasis added). In the case herein, not only did Dr. Farrage clearly express the basis of his opinion, upon which the ALJ relied in determining that Everett could not resume his previous employment, Everett himself testified that he was no longer capable of physically performing the level of pre-injury work at Clariant due to his left leg pain.

Because this Court has consistently held that an ALJ is free to accept an employee's self-assessment of his ability to labor, Everett's testimony, along with the limitations noted by Dr. Farrage, constitute sufficient substantial evidence

to support the ALJ's application of a three-multiplier. The ALJ's determination falls squarely within the principles set out in *Hamilton*:

> Although a party may note evidence which would have supported a conclusion contrary to the ALJ's decision, such evidence is not an adequate basis for reversal on appeal. The crux of the inquiry on appeal is whether the finding which was made is so unreasonable under the evidence that it must be viewed as erroneous as a matter of law.

*Id*. (citations omitted). Nothing in this record or Clariant's arguments would allow us to reach such a conclusion regarding the ALJ's findings. Accordingly, we must affirm.

## CONCLUSION

For the foregoing reasons, the opinion of the Board is hereby AFFIRMED.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE BRADLEY EVERETT: |
|---|---|
| Donald J. Niehaus | |
| Lexington, Kentucky | Ched Jennings |
| | Louisville, Kentucky |