Debbie MEDLEY, Appellant,

v.

BOARD OF EDUCATION of SHELBY COUNTY; and Dr. Leon Mooneyhan, in His Official Capacity as Custodian of Records for the Shelby County Public Schools, Appellees.

No. 2003–CA–001515–MR.

Court of Appeals of Kentucky.

Oct. 22, 2004.

Discretionary Review Denied by Supreme Court Aug. 17, 2005.

---

John Frith Stewart, Stephen C. Emery, Louisville, KY, for appellant.

Robert L. Chenoweth, John C. Fogle, III, Frankfort, KY, for appellee.

Before MINTON, SCHRODER, and TAYLOR, Judges.

## OPINION

MINTON, Judge.

The Family Educational Rights and Privacy Act ("FERPA")[1] and the Kentucky Family Educational Rights and Privacy Act ("KFERPA")[2] permit education records otherwise shielded from open records[3] disclosure to be made available to teachers with a legitimate educational interest in them. Debbie Medley is a classroom teacher who made an open records request to view videotape recordings of her own classroom. Her request was denied, assumedly on the basis that Medley did not have a legitimate educational interest in viewing the videotapes. On appeal, we hold there was not substantial evidence to support the circuit court's findings regarding the legitimacy of Medley's interest. Therefore, we are compelled to reverse and remand for a hearing to determine whether Medley had a legitimate educational interest as defined by FERPA and KFERPA.

Medley is a certified, tenured teacher with the Shelby County Public School system. She teaches special education students in classroom 120 at Shelby County High School. After students in Medley's classroom complained she had treated them inappropriately, cameras were installed in classroom 120 to monitor her performance. The installation of the cameras was not challenged by Medley.

On April 16, 2002, Medley made an open records request to the principal of Shelby County High School to view "any and all video tapes that have been made of classroom 120 of Shelby County High School."[4] Medley's stated basis for the request was her belief the tapes would be a valuable resource "to use to evaluate [her] performance, as a teacher, as well as the management of [her] classroom."[5]

Medley's letter was forwarded to Dr. Leon Mooneyhan, Superintendent of Shelby County Public Schools. In a letter sent through counsel, Mooneyhan denied Medley's request. The letter stated the tapes constituted "education records," and were, therefore, exempted from release pursuant to KRS 61.878(1)(k) and 61.878(1)(l). Mooneyhan's denial claimed FERPA and KFERPA prohibited the release of the videotapes to Medley.

Medley requested the Attorney General review Mooneyhan's decision. The Attor-

---

1. 20 U.S.C.A. § 1232g.

2. Kentucky Revised Statute (KRS) 160.700, et seq.

3. Kentucky Open Records Act, KRS 61.870—61.884.

4. Letter from Debbie Medley to Mr. Jim Flynn, Principal, Shelby County Public Schools (Apr. 16, 2002).

5. Id.

ney General affirmed the decision, and Medley appealed to the Shelby Circuit Court. In its review, the court agreed the disputed tapes were education records within the scope of FERPA and KFERPA. The court also agreed with the Attorney General that the application of the Open Records Act in this case "turns not upon the identity of the requesting party or her stated interest in the records, but rather on the nature of the records at issue." The court disregarded Medley's status as a teacher and her purported interest in viewing the videotapes and held that since the tapes were "education records" as defined by federal and state law, they were exempt from disclosure under the Open Records Act. Therefore, the court affirmed the Attorney General's decision, and held the Shelby County Public Schools could not be compelled to release the videotapes to Medley. This appeal follows.

Medley first argues her request is not exempted by the Open Records Act.[6] Specifically, Medley argues she fits within an exception that permits teachers to inspect education records.

■ We note at the outset that the circuit court's review of an Attorney General's opinion is *de novo*.[7] As such, we review the circuit court's opinion as we would the decision of a trial court. Questions of law are reviewed anew by this Court.[8] When there are questions of fact, or mixed questions of law and fact, we review the circuit court's decision pursuant to the clearly erroneous standard.[9] Under this standard, this Court will only set aside the findings of fact of the circuit court if those findings are clearly erroneous. The dispositive question is whether the findings are supported by "substantial evidence."[10] "Substantial evidence" is evidence "that a reasonable mind would accept as adequate to support a conclusion," and evidence that, when "taken alone or in the light of all the evidence, . . . has sufficient probative value to induce conviction in the minds of reasonable men."[11]

■ We also note that although this Court is not bound by the opinions of the Attorney General, "they have been considered 'highly persuasive.'"[12] This Court will "give great weight to the reasoning and opinion expressed [by the Attorney General]."[13]

■ The Open Records Act states, "[u]pon inspection, the applicant shall have the right to make abstracts of the public records and memoranda thereof, and to obtain copies of all public records not exempted by the terms of KRS 61.878."[14] The "basic policy" of the Act is that "free and open examination of public records is in the public interest. . . ."[15] The burden is on the public agency opposing disclosure to establish that a record is exempt from release.[16]

6. KRS 61.878.

7. KRS 61.882.

8. *Hardin County Schools v. Foster*, Ky., 40 S.W.3d 865, 868 (2001).

9. *Moore v. Asente*, Ky., 110 S.W.3d 336, 354 (2003).

10. *Id.*

11. *Id.*

12. *Palmer v. Driggers*, Ky.App., 60 S.W.3d 591, 596 (2001), *quoting, York v. Commonwealth*, Ky.App., 815 S.W.2d 415 (1991).

13. *York*, 815 S.W.2d at 417.

14. KRS 61.874.

15. KRS 61.871.

16. *University of Kentucky v. Courier–Journal & Louisville Times Co.*, Ky., 830 S.W.2d 373, 377 (1992).

In affirming the Attorney General's denial of Medley's request, the court specifically cited to KRS 61.878(1)(k) and 61.878(1)(*l*). KRS 61.878(1)(k) states records are excluded from an open records request when federal law or regulation prohibits disclosure of the record. Similarly, KRS 61.878(1)(*l*) states records need not be disclosed when such disclosure is prohibited, restricted, or made confidential by an act of the General Assembly. With regards to the exemptions listed in KRS 61.878, the General Assembly has specifically dictated that they "shall be strictly construed, even though such examination may cause inconvenience or embarrassment to public officials or others." [17]

Both the Attorney General and the circuit court cited to FERPA and KFERPA in support of the opinion that disclosure of the videotapes was prohibited. FERPA generally states that funds will not be made available to educational institutions that deny or prevent parents of students in attendance at the school access to the student's education records.[18] FERPA further states funds will not be made available to educational institutions that release the education records of students to third parties without the express written consent of that student's parents. Certain third parties are exempt from this rule, such as:

> other school officials, including teachers within the educational institution ... who have been determined by such agency or institution to have legitimate educational interests, including the edu-

cational interests of the child for whom consent would otherwise be required; [19]

And the pertinent section of KFERPA likewise states:

> Educational institutions shall not permit the release or disclosure of records, reports, or identifiable information on students to third parties ... without parental or eligible student consent except to:
>
> (a) Other school officials, including teachers, with legitimate education interests and purposes.[20]

The term "education records" is defined by FERPA as "those records that are (1) Directly related to a student; and (2) Maintained by an educational agency or institution or by a party acting for the agency or institution." [21] For purposes of KFERPA, the term is defined as "data and information directly relating to a student that is collected or maintained by educational institutions or by a person acting for an institution...." [22]

Although both FERPA and KFERPA contain an exception to the rule against disclosure of education records when a teacher with a legitimate educational interest requests the record, neither the Attorney General nor the circuit court found that Medley fell within this exception. Rather, both opinions cited to *Zink v. Com., Dept. of Workers' Claims, Labor Cabinet*[23] for the proposition that the analysis should turn not on Medley's status as a teacher but, rather, "on the nature of the records requested." [24]

---

**17.** KRS 61.871.

**18.** 20 U.S.C.A. 1232g(1).

**19.** 20 U.S.C.A. 1232g(6)(1)(A).

**20.** KRS 160.720(2).

**21.** 34 C.F.R. § 99.3(a)(1) and (2); *see also,* 20 U.S.C.A. 1232g(4)(A)(i) and (ii), (5).

**22.** KRS 160.700(3).

**23.** Ky.App., 902 S.W.2d 825 (1994).

**24.** Opinion of the Attorney General, 02–ORD–132, July 17, 2002, at page 7.

In *Zink,* an attorney was denied access to records of the Department of Workers' Claims. The requested records, employer injury reports, included detailed personal information concerning injured employees.[25] The Court affirmed the decision to deny Zink access to the records, holding that to do so would violate the privacy interests of the employees. The Court stated the decision was not based upon Zink's position as an attorney but, rather, that the outcome would have been the same regardless of who had made the request.[26]

Citing to the Court's rationale in *Zink,* the Attorney General in this case stated, "[u]nder an Open Records Act analysis, Ms. Medley is treated as a member of the public whose access to the disputed records is foreclosed by state and federal law."[27] Therefore, both the Attorney General and the circuit court held that Medley should be treated as "a member of the public," rather than as a teacher. Since members of the public are generally prohibited by FERPA and KFERPA from viewing education records, Medley was denied access to the videotapes.

The Attorney General and the circuit court also cited to the Attorney General's opinion in 99–ORD–217 in support of the decision to prohibit Medley from viewing the tapes. In that case, a parent made a request to the Bell County School System to view videotapes used to monitor student activities aboard a school bus. The request was denied. The Attorney General held videotapes used to record conduct on a school bus were "education records" within the meaning of FERPA and KFERPA. Accordingly, the parent was prohibited from viewing the videotapes since the recording would necessarily reveal the identities of students other than the parent's own child. The Attorney General stated that allowing the parent to view the videotapes would violate the confidentiality rights of other students aboard the bus, thereby, contravening the express provisions of FERPA and KFERPA. The school bus scenario was likened to the present case in that both involved videotapes used for monitoring that would reveal the identities of students.

██ We believe the rationale of the Attorney General and the circuit court in denying Medley's request is flawed. Although we agree the videotapes in question are, in fact, "education records," we do not believe Medley's request should be considered as made by "a member of the public." Rather, Medley's request should be judged in light of her position as a teacher.

First, both the *Zink* case and the school bus example are clearly distinguishable from the facts of this case. In *Zink,* the person requesting to view the documents was an attorney attempting to gain access to personal employee information from the Department of Workers' Claims, assumedly in order to solicit clients. In the school bus scenario, a parent who was never present on the bus in question requested access to videotapes monitoring activities on the bus to prove other children were bullying his son.

Medley, on the other hand, is a teacher who was present in the classroom when the videotapes were recorded. She was aware of the installation and use of the videotapes to monitor her performance. Since Medley was present when the videotapes were made, there is no confidentiali-

---

**25.** *Zink* at 827.

**26.** *Id.* at 828.

**27.** Opinion of the Attorney General, 02–ORD–132, July 17, 2002, at page 7.

ty issue. Medley would obviously have knowledge of the students in her classroom. Therefore, reliance on *Zink* and the school bus example are mistaken.

Second, we are, frankly, puzzled by the circuit court's explanation for why Medley was denied access to the videotapes. The circuit court states Medley was prohibited from viewing the videotapes because of the exemptions listed in KRS 61.878(1)(k) and KRS 61.878(1)(*l*). The KRS sections cited exempt documents from disclosure if disclosure would violate state law, federal law, or acts of the General Assembly. Assumedly, the circuit court was asserting that disclosure of the videotapes would violate FERPA and KFERPA.

Yet, in the very same paragraph, the court acknowledges, "Medley might be granted permissive access [to the videotapes] as an educator under FERPA and KFERPA." We do not comprehend how Medley "might be granted" access pursuant to FERPA and KFERPA, while simultaneously being foreclosed from viewing the tapes under these same laws.

■ Under our interpretation of the statutes in question, the only provision of FERPA or KFERPA that would prevent Medley from viewing the videotapes would be a determination that her purpose for requesting the videotapes was not "a legitimate educational interest." As a teacher, Medley is expressly permitted by FERPA and KFERPA to view education records, so long as a legitimate educational interest is established. The court identified Medley as an educator, yet, nonetheless, found she was precluded from viewing the videotapes. Thus, the circuit court impliedly found Medley's request was not made pursuant to a legitimate educational interest.

■ Viewing the record as a whole, there is not substantial evidence to support this finding. The record is, in fact, void of any discussion of Medley's educational interest in the videotapes, other than the statement made in her initial request that the videotapes would be beneficial to improve her teaching performance and manage her classroom. Moreover, Mooneyhan and the Board did not fulfill their burden of proof by establishing that Medley's interest was not legitimate. Since the circuit court's decision regarding the legitimacy of Medley's educational interest was not supported by substantial evidence, we hold that the finding was clearly erroneous. As such, we must reverse and remand for a hearing on the issue of whether Medley had a legitimate educational interest. If the court finds her interest to indeed be legitimate, Medley must be afforded the opportunity to view the videotapes pursuant to the requirements of the Open Records Act.

■ Medley's second argument is that the circuit court erroneously denied her request to be present during an *in camera* review of the videotapes in question. We disagree.

■ KRS 61.882 states, "[t]he court on its own motion, or on motion of either of the parties, may view the records in controversy *in camera* before reaching a decision." The term "in camera" is defined by Black's Law Dictionary as, "[i]n the judge's private chambers. 2. In the courtroom with all spectators excluded. 3. (Of a judicial action) taken when court is not in session." [28]

■ The judge in this case chose to view the videotapes *in camera*, in his chambers, without counsel or parties present. Such a choice is purely discretionary and clearly within the province of the

judge. This Court will not second-guess the discretionary decisions of a circuit court unless those decisions amount to an abuse of discretion. In this case, permitting Medley to view the videotapes *in camera* would have rendered the entire controversy void. If the videotapes were, in fact, exempt from disclosure, Medley would have had access to records which otherwise would have been confidential. Therefore, we hold that the decision of the circuit court denying Medley's motion to be present for the *in camera* viewing of the videotapes was proper.

Finally, Medley contends the Board of Education's argument regarding a potential separation of powers issue is without merit. We agree.

 The Board argues, "Medley's efforts to convert the permissive educator access provisions of FERPA and KFERPA into mandatory Open Records Act access does indeed raise the prospect of the undermining of the executive authority of the school administration by way of judicial override of such authority." We note that a school superintendent has the power to exercise general supervision over the schools in his district.[29] However, the outcome of this case does not turn on the superintendent's authority. It is instead a matter of statutory interpretation, a task clearly within the province of this Court. Our elucidation of the statute in question in no way usurps the authority of Mooneyhan or the Shelby County Board of Education. Therefore, the Board's argument is flawed.

For the foregoing reasons, the opinion of the Shelby Circuit Court is affirmed with respect to the denial of Medley's request to view the videotapes *in camera*. The opinion is reversed and remanded for a hearing to determine whether Medley's

open records request was made pursuant to a legitimate educational interest as defined by FERPA and KFERPA.

ALL CONCUR.

---

29. KRS 160.390; KRS 160.370