**AIK SELECTIVE SELF–INSURANCE FUND, Appellant**

v.

**Mary E. MINTON, Administratrix for the Estate of Sylvester T. Minton; and the Estate of Sylvester T. Minton, Appellees.**

**No. 2004–SC–0326–DG.**

Supreme Court of Kentucky.

May 18, 2006.

---

W. Kenneth Nevitt, Nevitt Law Office, Louisville, Attorney for Appellant.

Robert L. Bertram, Bertram and Wilson, Jamestown, W. Ronnie Amburgey, Carlisle, Attorney for Appellees.

Timothy P. O'Mara, Middleton & Reutlinger, Louisville, Attorney for Amicus Curiae for Transpac Soultuions, Inc.

Opinion of the Court by Justice GRAVES.

Appellant, AIK Selective Self–Insurance Fund, appeals from a decision of the Court of Appeals which affirmed an order of the Russell Circuit Court. For the reasons set forth herein, we now affirm the Court of Appeals.

Appellant is the workers' compensation insurance carrier for the former employer of decedent, Sylvester T. Minton. Mr. Minton collected workers' compensation benefits from Appellant due to an injury he received during the course and scope of his employment with Hinkle Construction Company. When Mr. Minton filed a tort action against a third-party for these injuries, Appellant timely intervened to exercise its subrogation claim. The third-party agreed to settle Mr. Minton's tort claim for $150,000. Although the trial court found that Appellant had made total payments to Mr. Minton in the amount of $28,227.11, the trial court further found that the legal fees and expenses expended by Mr. Minton in pursuing his third-party tort claim were $68,475.59. Since the legal fees and expenses exceeded the total amount of benefits paid by Appellant, the trial court ruled that Appellant was entitled to no subrogation recovery pursuant to KRS 342.700(1).

KRS 342.700(1) states, in pertinent part, as follows:

Whenever an injury for which compensation is payable under this chapter has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages, the injured employee may either claim compensation or proceed at law by civil action against the other person to recover damages, or proceed both against the employer for compensation and the other person to recover damages, but he shall not collect from both.

If the injured employee elects to proceed at law by civil action against the other person to recover damages, he shall give due and timely notice to the employer and the special fund of the filing of the action. If compensation is awarded under this chapter, the employer, his insurance carrier, the special fund, and the uninsured employer's fund, or any of them, having paid the compensation or having become liable therefor, may recover in his or its own name or that of the injured employee from the other person in whom legal liability for damages exists, *not to exceed the indemnity paid and payable to the injured employee, less the employee's legal fees and expense.*

(Emphasis added). In *AIK Selective Self–Insurance Fund v. Bush,* 74 S.W.3d 251 (Ky.2002), this Court stated in dicta that the above referenced statute "requires that the employee's *entire legal expense, not just a pro rata share,* be deducted from the employer's or insurer's portion of any recovery." *Id.* at 257 (emphasis added).

Appellant argues that the subrogation computation advocated in *Bush, supra,* and applied by the trial court in this instance is unfair and arbitrary in violation of both the due process clause of the United States Constitution and Section 2 of the Kentucky Constitution. Appellant's subrogation credit was wiped out in this case because Appellees' total legal fees and expenses in the tort claim exceeded its subrogation claim. Appellant claims this interpretation of KRS 342.700(1) is unfair because a portion of those legal fees and expenses may be attributable to recovering tort damages (namely, pain and suffering) which are not duplicative of and are unrelated to the workers' compensation benefits it previously paid. Accordingly, Appellant argues that this Court should in-

terpret KRS 342.700(1) so as to deduct only those legal fees and expenses that may be attributable to the recovery of tort damages which duplicate the workers' compensation benefits previously paid by the employer/insurer. Appellant further argues that the computation technique advocated in *Bush, supra,* and applied by the trial court in this instance is arbitrary because it would result in windfalls for only the most successful tort litigants.[1]

▊▊▊ While Appellant's arguments may seem perfectly reasonable, we are not at liberty to abandon the plain language of a statute. This Court has "a duty to accord to words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion." *Bailey v. Reeves,* 662 S.W.2d 832, 834 (Ky. 1984). "Where a statute is intelligible on its face, the courts are not at liberty to supply words or insert something or make additions however just or desirable it might be to supply an omitted provision." *Berry v. Commonwealth,* 782 S.W.2d 625, 626 (Ky.1990) (citations omitted).

▊▊▊ We find that it is not absurd or wholly unreasonable to accord the language of KRS 342.700(1) its literal and plain meaning. Tort claims involve a significant risk and require substantial energy in pursuing recovery. It is only fair to require employers/insurers benefiting from the fruits of such an endeavor to share in

its costs. *Stacy v. Noble,* 361 S.W.2d 285, 289 (Ky.1962) ("We have concluded that regardless of the facts of the initial employment of counsel, if the employee's counsel actually bears the burden of obtaining recovery from the third party, then whoever takes the money is chargeable with a share of the fee."). Moreover, it is not arbitrary that the entire cost of pursuing the tort award (including those portions which do not duplicate the benefits paid as workers' compensation) should be deducted from an employer/insurer's subrogation credit.

Under the common law, subrogees had no right to subrogation until the injured party was "made whole." *Wine v. Globe American Casualty Co.,* 917 S.W.2d 558, 561–62 (Ky.1996). In other words, the injured party must be fully compensated for all of his or her injuries before the subrogee is entitled to reimbursement. *Id.* This doctrine recognized the basic premise that the right of the injured party to receive full recovery for his or her injuries is superior to the right of the subrogee to receive a credit for benefits previously paid on behalf of the injured party.

▊▊▊ While the "made whole" doctrine may not be employed to trump or undermine the statutory subrogation scheme set forth in workers' compensation cases, *see*

---

1. The unfairness claimed by Appellant results primarily from the standard contingency fee contracts that most plaintiffs enter into when pursuing tort claims. Most plaintiff's attorneys charge anywhere from 25 to 40 percent of any tort award realized by the plaintiff as their fee, plus expenses. Thus, if two injured employees have the same amount of medical and lost wage damages, say $50,000, and each claim $100,000 in pain and suffering resulting from his or her injury, then those employees, if successful, can expect to receive a tort award ranging anywhere from $50,000 to $150,000. Attorney fees on the portion of the award which tend to duplicate those benefits previously paid out as workers' compensation benefits would be approximately $20,000. However, when the rather large pain and suffering portion of the award is also considered, the fees triple to $60,000. Accordingly, as an employee's tort award increases, his liability for paying a subrogation credit to his employer/insurer actually decreases (rather than increases). Under the current statute, employees winning the smallest tort awards will be the most likely to pay subrogation liens.

*Bush, supra,* at 255–56, its underlying principles remain relevant when explicating the statute's primary functions. Paying workers' compensation benefits is an obligation derived by contract. In exchange for agreeing to pay benefits, employer-subrogees receive revenues and profits from the labor of its employees, as does the insurer-subrogee consequently receive its revenue and profits from the premiums paid by the employer. Thus, in order for the injured worker to receive the full benefit of his bargain, his right to receive a maximum recovery under the statute must take priority over the right of the employer/insurer to receive reimbursement for the benefits which it was already obligated to pay by contract. *See Wine, supra.* The conditional right to subrogation authorized under KRS 342.700(1) merely recognizes and codifies this underlying principle of the "made whole" doctrine.[2]

In this case, Appellees are not receiving double recovery for Mr. Minton's injuries because a portion of the tort award must be utilized to pay legal fees and expenses. This diversion of funds has resulted in Appellees receiving less than full compensation for those injuries. Under such circumstances, it is reasonable for the legislature to deny employer/insurers an additional subrogation credit from the tort award unless the employer/insurer's subrogation claim is greater than the costs incurred to pursue the tort award.

The reasonableness of the result in this case is not contradicted by the reality that a portion of the legal fees and expenses in any tort case may be attributed to the recovery of damages (such as pain and suffering) which are not duplicative of the workers' compensation benefits previously paid to the injured worker. It is not irrational for the legislature to regard the cost of the injured worker's pursuit of a tort judgment as a whole and singular endeavor, not subject to apportionment based on the elements of damages actually awarded. Moreover, KRS 342.700(1) does not deprive Appellant of any vested or anticipated property interest since any recovery by the employer/insurer is entirely the result of the injured worker's successful pursuit of a tort judgment. Accordingly, we reject Appellant's arguments that the plain language of KRS 342.700(1) is unreasonable, arbitrary or in violation of any of Appellant's rights under either the United States or the Kentucky Constitutions. *See also, Whittaker v. Hardin,* 32 S.W.3d 497, 499 (Ky.2000) ("The right to a subrogation credit in a workers' compensation case is purely statutory.").

■ Appellant next argues that a portion of Appellees' attorney fees and expenses should not be deducted from its subrogation credit because those fees and expenses have already been paid by the tortfeasor. Thus, deducting attorney fees and expenses already paid by another party would result in the Appellees receiving "double recovery" for a significant portion of Mr. Minton's injuries.

At first glance, Appellant's argument is convincing. Appellees received a total award of $150,000, yet, only $52,756.77 of the award was actually allocated by the trial court (as medical expenses and lost wages). Accordingly, $97,243.23 of the award has gone unallocated by the trial court. Appellant argues that, at most, Appellees would be entitled to $38,808 in pain and suffering since that is the amount

---

**2.** KRS 342.700(1) also permits injured workers to seek full recovery for their injuries by allowing such workers to receive compensation from both the employer and a third-party tortfeasor so long as the injured worker does not receive double recovery for the injuries. *Bush, supra,* at 254.

Appellees' alleged in their complaint.[3] When the pain and suffering award is added to the award for medicals and lost wages, there is a perception as if Appellees are receiving a windfall of approximately $58,435.23.

Appellant argues that we should presume that this unallocated portion of the award is meant to compensate Appellees for their attorney fees and expenses. Yet, we find no basis in the law to support such a presumption. To the contrary, "with the exception of a specific contractual provision allowing for recovery of attorneys' fees or a fee-shifting statute, ... each party assumes responsibility for his or her own attorneys' fees." *Aetna Casualty & Surety Co. v. Commonwealth,* 179 S.W.3d 830, 842 (Ky.2005) (citation omitted); *see generally, Attorney Fee–Shifting in America: Comparing, Contrasting, and Combining "the American Rule" and "the English Rule,"* 15 Ind. Int'l & Comp. L.Rev. 583 (2005) (for a discussion on the pros and cons of America's tradition of according each party his or her own attorney fees). Since the settlement in this case was strictly between Appellees and the third-party tortfeasor, we find it unreasonable to presume that unallocated portions of a tort settlement were meant to pay for attorney fees and expenses.

Finally, Appellant alleges that the trial court's calculation of Mr. Minton's lost wages and attorney expenses were not supported by the evidence. These arguments are moot in light of the substantial portion of the tort settlement having gone unallocated and Appellant's failure to allege any error in this respect.

The decision of the Court of Appeals is affirmed.

3. Appellees asked to be reimbursed for Mr. Minton's pain and suffering at a rate of $.05 cents per minute, which according to Appellant, works out to be $38,808 over a 77 week

LAMBERT, C.J., GRAVES, JOHNSTONE, SCOTT, and WINTERSHEIMER, J.J., concur.

COOPER, J., files a separate concurring opinion in which ROACH, J., joins.

Concurring opinion by Justice COOPER.

I concur in the result reached in this case but do not agree with the unnecessary dictum that suggests that KRS 342.700(1) codifies any principle of the so-called "made whole" doctrine. *Ante,* at 418. In fact, as we held in *AIK Selective Self Insurance Fund v. Bush,* 74 S.W.3d 251 (Ky.2002), the proscription against double recovery in KRS 342.700(1) precludes application of the "made whole" doctrine in the workers' compensation context. *Id.* at 256–57.

ROACH, J., joins this concurring opinion.

time period (the period beginning when Mr. Minton received his injury and ending when Mr. Minton died by suicide).