Veronica JEWELL, Appellant,

v.

**KENTUCKY SCHOOL BOARD
ASSOCIATION, Appellee.**

No. 2008–SC–000244–DG.

Supreme Court of Kentucky.

Jan. 21, 2010.

Rehearing Denied May 20, 2010.

John E. Anderson, Dennis L. Nagle, Cole, Cole, Anderson & Nagle, W. Patrick Hauser, Barbourville, KY, Counsel for Appellant.

John Steven Harrison, Frankfort, KY, Counsel for Kentucky School Board Association.

Jeanie Owen Miller, Jeanie Owen Miller Law Offices, PLLC, Owensboro, KY, Counsel for Kentucky Justice Association.

Opinion of the Court by Justice
VENTERS.

This case arises from a motor vehicle collision where the injured party, at work when the collision occurred, pursued her remedies against her under-insured motorist insurer. Among other issues, we address the question of whether an injured worker, as assignee of her workers' compensation carrier's subrogation rights, may enforce those rights against her underinsured motorist insurance provider. Although prior decisions have addressed separate elements of the issue, we find none that have application to the combination of factors present here.

### RELEVANT FACTS

Appellant, Veronica Jewell, while working as a school bus monitor for Williamsburg Independent School System, injured her left knee when the school bus she was riding was struck by another vehicle. The driver of the other vehicle caused the collision. Appellee, Kentucky School Board Association (KSBA), administered a liability self-insurance trust for the school system, and thereby provided motor vehicle insurance coverage for Appellant that included $20,000.00 in basic reparation benefits (BRB) and underinsured motorist (UIM) protection.

The school system's workers' compensation carrier paid $17,734.55 in medical benefits on behalf of Appellant, mainly for knee surgery. She also received temporary disability income benefits of $784.55. Appellant later had total knee replacement surgery. The workers' compensation carrier denied payment for that surgery, based on its assessment that the need for the surgery did not arise from the work-related accident. Ultimately, the knee replacement surgery was paid for by Appellant's health care insurer, whose right to subrogation was preserved.

Eventually, Appellant settled the dispute with her workers' compensation insurer for $25,000.00, from which $8307.45 was paid to the health insurer to satisfy its right of subrogation. As part of the settlement, the workers' compensation carrier and the health care insurer assigned to Appellant their third-party subrogation rights.

The only BRB payments paid by KSBA to, or on behalf of, Appellant was $333.45 for lost wages not paid by workers' compensation.

After settling her tort claim against the negligent driver for his liability policy limits of $25,000, Appellant filed suit against Appellee, KSBA, for the available UIM coverage. The case was tried in the Whitley Circuit Court by a jury which found that Appellant suffered the following damages as a result of the accident:

| | |
|---|---|
| Medical expenses to date | $ 70,558.77 |
| Future medical expenses | .00 |
| Lost wages or income | $ 5,544.00 |
| Future lost wages | .00 |
| Pain and Suffering | $ 25,000.00 |
| TOTAL | $101,102.77 |

Before entering final judgment, the trial court reduced the award by the $25,000.00 paid by the tortfeasor's liability carrier and $333.45 previously paid to Appellant by KSBA as basic reparation benefits.

On appeal, the Court of Appeals held: 1) that Appellant's UIM carrier was entitled to an offset for workers' compensation benefits paid on Appellant's behalf; 2) that Appellant's judgment could not be credited with the attorney's fees and expenses she incurred; and, 3) that Appellant's judgment should have been reduced by the full $20,000 of available BRB, rather than $333.45 in benefits actually paid.

We affirm the Court of Appeals with respect to the first two issues. On the third issue, we reverse the Court of Appeals.

## ANALYSIS

### I. APPELLANT, AS ASSIGNEE OF HER WORKERS' COMPENSATION CARRIER'S SUBROGATION RIGHTS, MAY NOT ENFORCE THOSE RIGHTS AGAINST HER UIM PROVIDER.

■ Appellant challenges the Court of Appeals' decision that barred her claim against KSBA's UIM coverage in the amount of the workers' compensation award, arguing the KRS 342.700(1)'s prohibition against double recovery does not apply to her because she is exercising her own rights as the injured employee *and* her rights as assignee of her workers' compensation provider. KRS 342.700(1) provides, in part:

"Whenever an injury for which compensation is payable under this [workers' compensation] chapter has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages, the injured employee may either claim compensation or proceed at law by civil action against the other person to recover damages, or proceed both against the employer for compensation and the other person to recover damages, but he

shall not collect from both.... If compensation is awarded under this chapter [the workers' compensation provider] ... may recover ... from the other person in whom legal liability for damages exists, not to exceed the indemnity paid and payable to the injured employee, less the employee's legal fees and expense."

KRS 342.700(1) plainly states that a workers' compensation insurance provider has a right of recovery against the tortfeasor for the liability it incurred on behalf of an injured worker. Appellant correctly relies on the holding of *Weinberg v. Crenshaw*, 896 S.W.2d 22, 24 (Ky.App.1995) that a provider of workers' compensation benefits may assign that right to the injured worker, and that the injured worker may enforce that right against a person "other than the employer" who is legally liable for the damages. Doing so does not offend KRS 342.700(*l*)'s rule against double recovery. *Weinberg* is solidly grounded on the principle that as assignee, the injured employee "step(s) into the shoes" of the insurance carrier and his claim against the tortfeasor exists as a derivative action based on the assignment rather than an independent claim of tort victim in his own right. *Id.* at 24. There is no "double recovery" when the injured employee/assignee recoups from the tortfeasor what the insurance carrier/assignor had a right to recover. Nor, does the tortfeasor or his insurer pay the same damage twice. What is paid to the injured employee as tort victim compensates different damages than funds paid to recompense the workers' compensation provider.

In *Krahwinkel v. Commonwealth Aluminum Corp.*, 183 S.W.3d 154 (Ky.2005), citing decisions dating back to the initial enactment of the workers' compensation

statutes,[1] we held that KRS 342.700(1) precludes a plaintiff from recovering from a tortfeasor the same elements of damages for which he had already been compensated by way of workers' compensation benefits; and that the tortfeasor is entitled to an offset or credit against the judgment for those damages awarded by the jury that duplicate workers' compensation benefits. 183 S.W.3d at 160. The workers' compensation carrier's apparent abandonment of its subrogation rights against the tortfeasor does not effect a transfer of those rights to the injured worker. The result may be a "windfall" for the tortfeasor,[2] but such is the case any time a cause of action goes unpursued. *Krahwinkel*, however, did not arise from a motor vehicle accident and therefore does not address the liability of a UIM provider.

*Cincinnati Ins. Co. v. Samples*, 192 S.W.3d 311 (Ky.2006), did involve the liability of an UIM carrier. In *Samples*, we applied the *Krahwinkel* holding to a plaintiff who was seeking to recover from his UIM carrier the same elements of damages for which he had already been compensated by way of workers' compensation benefits. We held that because the UIM carrier "stands in the wrongdoer's shoes for purposes of paying damages," and since under *Krahwinkel*, the tortfeasor had no liability to the injured employee to the extent of workers' compensation benefits, the UIM carrier had no liability for the same damages. *Id.* at 316.

Appellant distinguishes herself from the plaintiffs in *Krahwinkel* and *Samples* because, unlike those parties, she holds a valid assignment of the workers' compensation insurer's subrogation rights against the tortfeasor, which she may under *Weinberg v. Crenshaw* clearly enforce. The question she raises now is whether that claim may be enforced, not against the tortfeasor or his liability insurance carrier (whose liability was extinguished by paying Appellant the policy limits), but against KSBA, her own UIM provider.

KRS 342.700(1) permits Appellant's workers' compensation carrier to recover from "the other person in whom legal liability for damages exists." Appellant urges us to enunciate a construction of that phrase broad enough to include KSBA in its role as a UIM provider. Such a construction would require that we overrule the long-standing precedent established by this Court in *State Farm Mutual Ins. Co. v. Fireman's Fund Am. Ins. Co.*, 550 S.W.2d 554 (Ky.1977), and more recently followed by the Court of Appeals in *G & J Pepsi–Cola Bottlers, Inc. v. Fletcher*, 229 S.W.3d 915 (Ky.App.2007);. *State Farm Mutual Ins. Co. v. Fireman's Fund Am. Ins. Co.* holds:

A payment made in performance of a contractual obligation is not a payment of "damages." Hence the liability of an insurance company under its uninsured motorist coverage cannot be the "legal liability for damages" mentioned in KRS 342.055 [now codified as KRS 342.700(1) ]. Moreover, the satisfaction of an injured party's claim by his own insurance company under its uninsured

---

1. *S. Quarries & Contracting Co. v. Hensley*, 313 Ky. 640, 232 S.W.2d 999 (1950); *Dillman v. John Diebold & Sons Stone Co.*, 241 Ky. 631, 44 S.W.2d 581 (1931); *Napier v. John P. Gorman Coal Co.*, 242 Ky. 127, 45 S.W.2d 1064 (1931); *Berry v. Irwin*, 224 Ky. 565, 6 S.W.2d 705 (1928); *Williams v. Brown*, 205 Ky. 74, 265 S.W. 480 (1924); *Book v. City of Henderson*, 176 Ky. 785, 197 S.W. 449 (1917).

2. Three justices dissented, expressing concern that the windfall arising from the failure of the workers' compensation carrier to assert its subrogation rights should not go to the undeserving tortfeasor.

motorist coverage does not inure to the benefit of the uninsured motorist. His liability is not extinguished, and it may be enforced by both the carrier which has paid workmen's compensation benefits and the carrier which has paid under the uninsured motorist coverage. . . .

To hold that the contractual rights of an insured party under the uninsured motorist clause of an automobile liability insurance policy must inure to the benefit of a workmen's compensation carrier . . . would confer upon the compensation carrier an additional right which it does not have under the subrogation statute. The injured party, or the person under whose insurance policy he is defined as an "insured," has no obligation to his employer's compensation carrier to carry any automobile liability insurance whatever. In the absence, therefore, of a statute or agreement to the contrary, what can be the source of the compensation carrier's right to have the benefits of such insurance? The answer, we think, is that there is none.

*Id.,* 550 S.W.2d at 557.

We find no reason now to depart from that opinion. In *Samples,* we suggested that in appropriate circumstances persons other than the tortfeasor himself may fall within the range of "the other person in whom legal liability for damages exists." Specifically, we mentioned "the tortfeasor's employer, his parents (if he is minor and the parent had signed for his driver's license), his insurer (if permitted), or anyone else who could be held liable because of the tortfeasor's negligence." *Samples,* 192 S.W.3d at 315. That language refers to persons or entities (or their liability insurer) that under traditional tort law may be vicariously liable for another's conduct. The UIM carrier's responsibility to its insured does not arise from any relationship with the tortfeasor; it arises be-

cause of a contractual relationship with the tort victim to provide insurance for what the tortfeasor has failed to insure. In providing Appellant's UIM coverage, KSBA undertook to insure damages owed by the tortfeasor to Appellant in her own right. It did not insure the damages the tortfeasor may owe to her workers' compensation provider. The assignment of its subrogation rights to Appellant did not expand the UIM carrier's contractual obligation or expose it to liability that did not exist prior to the assignment. The rights she acquired by taking the assignment are no greater than the rights of her assignor. Because it had no right to recover from the UIM carrier, Appellant had no right to do so. The Court of Appeals opinion in this regard is affirmed.

## II. APPELLANT IS NOT ENTITLED TO AN OFFSET AGAINST THE DEDUCTIONS FROM THE JURY VERDICT FOR ATTORNEY'S FEES AND EXPENSES INCURRED IN PURSUING HER CLAIMS

■ Appellant further claims that the Court of Appeals erred by declining to apply to the facts present here our decision in *AIK Selective Self–Insurance Fund v. Minton,* 192 S.W.3d 415 (Ky.2006). Appellant notes that based on the contingent fee contract with her counsel, her ultimate recovery will be burdened with attorney's fees of $30,307.72 and expenses of $4,781.73. Under *Minton,* attorney's fees and expenses incurred by the injured worker must be deducted from the workers' compensation carrier's subrogation credit, even though doing so may totally subsume the subrogation claim. *Minton* is based on the portion of KRS 342.700(1) which reads, "If compensation is awarded under this chapter [the workers' compensation provider] . . . may recover . . . from the other person in whom legal liability for

damages exists, not to exceed the indemnity paid and payable to the injured employee, *less the employee's legal fees and expense.*" [Emphasis added]. Appellant would have us interpret *Minton* so that her attorney's fees and expenses are offset against the deduction from the jury award for KSBA's offset for workers' compensation benefits of $26,826.55 (medical benefits of $26,042 plus wage benefits of $784.55). Notwithstanding the fairness to be found in Appellant's position, we agree with the Court of Appeals that the rationale for the holding in *Minton* is guided exclusively by the language of the statute quoted above, and that by its terms the statute is limited to offsetting the recoupment due to the workers' compensation carrier. We see no authority that would justify the extension of *Minton* allowing an offset against the UIM provider's credits for Appellant's attorney's fees and expenses.

Accordingly, we affirm the Court of Appeals' denial of a credit for Appellant's attorney's fees and expenses.

## III. THE COURT OF APPEALS ERRED REVERSING THE TRIAL COURT'S RULING REGARDING THE DEDUCTION OF BRB FROM THE JUDGMENT

██ The trial court deducted from the damages awarded by the jury only the $333.45 of BRB actually paid to Appellant, rather than the full amount of $20,000 in available BRB. It is not clear from the record why KSBA, as reparation obligor, paid only $333.45 in BRB, but there is no doubt that a substantial factor was the controversy over whether all of Appellant's injuries were caused by the bus accident. The jury verdict resolved that issue in

Appellant's favor and found damages in a sum far exceeding the available BRB.

The Court of Appeals held that the judgment must be offset by the entire $20,000.00 in available BRB. Its decision was based upon KRS 304.39-060(2), which provides:

> Tort liability with respect to accidents occurring in this Commonwealth and arising from the ownership, maintenance, or use of a motor vehicle is "abolished" for damages because of bodily injury, sickness or disease to the extent the basic reparation benefits provided in this subtitle are payable therefor, or that would be payable but for any deductible authorized by this subtitle, under any insurance policy or other method of security complying with the requirements of this subtitle, except to the extent noneconomic detriment qualifies under paragraph (b) of this subsection.

Citing several authoritative decisions[3] in support of its interpretation of the statute, the Court of Appeals held that KRS 304.39-060(2) abolishes Appellant's tort claim to the extent that reparations benefits are "payable therefor."

The Court of Appeals also concluded Appellant could not avail herself of relief which maybe found in *Slone v. Caudill*, 734 S.W.2d 480 (Ky.App.1987) and *Henson v. Fletcher*, 957 S.W.2d 281 (Ky.App.1997) (holding in certain circumstances the judgment should be reduced only by the amount of BRB actually paid rather than the total amount of BRB "payable"), because she had presented "insufficient evidence" of KSBA's refusal to pay her BRB claims, that she had provided "no evidence" that workers' compensation had not

**3.** *State Farm Mut. Auto. Ins. Co. v. Fletcher,* 578 S.W.2d 41, 44 (Ky.1979); *Dudas v. Kaczmarek,* 652 S.W.2d 868 (Ky.App.1983); *Bohl v. Consolidated Freightways Corp. of Delaware,* 777 S.W.2d 613, 615 (Ky.App.1989);

covered those claims, and had presented no evidence that KSBA had failed to pay BRB after the exhaustion of her workers' compensation benefits.

Much is made in the arguments of the parties about whether KSBA denied payment of Appellant's BRB claim and whether Appellant failed to submit claims for coverage. Appellant asserts that she sought payments of additional medical expenses under BRB, but KSBA denied them because of the active issue over whether the injuries she claimed, including the knee replacement surgery, were caused by the bus accident. KSBA contends that Appellant failed to pursue her claim to the maximum available BRB under the KSBA policy. "If the appropriate reparation obligor is not forthcoming in paying basic reparation benefits to the statutory maximum, the injured party has a remedy under the Act to collect them." *Dudas*, 652 S.W.2d at 870. *See* KRS 304.39–210, KRS 304.39–220, and KRS 304.39–160.

■ If such evidence (i.e., whether Appellant requested payments and whether KSBA denied them) was essential to the factual findings needed to resolve the BRB offset issue, the trial court was the proper place to present it. It is not within the province of this Court, or the Court of Appeals, to resolve factual disputes material to the resolution of a claim. See *Whicker v. Whicker*, 711 S.W.2d 857 (Ky.App. 1986) (Where the trial court fails to make required findings and no request is made for such findings, the issue will not be considered on appeal).

The issue did not arise until KSBA moved under CR 59.05 to amend the judgment to deduct the remaining available BRB. In response, Appellant asserted, that under *Slone* and *Henson*, the offset was properly limited to $333.45. Neither party requested the opportunity to present evidence. The trial court denied the motion without an evidentiary hearing and without rendering findings of fact. What the Court of Appeals has characterized as "insufficient proof" is, in effect, the absence of factual findings by the trial court needed to resolve the issue. Regardless of which party had the burden of proof on the issue of the proper amount of the offset, once the trial court entered its order on that issue with no findings of fact, it became the burden of the party aggrieved by that order to request that the court make a recitation of the essential facts upon which it based its decision. KSBA did not do so. CR 52.04 provides:

> A final judgment shall not be reversed or remanded because of the failure of the trial court to make a finding of fact on an issue essential to the judgment unless such failure is brought to the attention of the trial court by a written request for a finding on that issue.

KSBA's argument that Appellant cannot rely upon *Slone* and *Henson*, depends, in, this Court as in the Court of Appeals, upon a finding of fact that was never made by the trial court—whether Appellant followed the correct process to claim the full measure of BRB available to her. CR 52.04 does not permit the trial court to be reversed for failure to make a finding on an essential fact unless a party has expressly requested such a finding. The Court of Appeals erred in reversing the trial court's decision on the BRB because of a disputed issue of fact, when the matter was never brought to the attention of the trial court. We therefore reverse the Court of Appeals on that point and reinstate the decision of the trial court to deduct from the judgment the actual BRB payment of $333.45 rather than the full $20,000.00 of available BRB.

## CONCLUSION

For the forgoing reasons, we reverse the opinion of the Court of Appeals insofar as it directs the trial court to deduct from the judgment the entire $20,000.00 of available BRB. Otherwise, we affirm the Courts of Appeals in remanding this case to the trial court for recalculation of damages consistent with this opinion.

All sitting. MINTON, C.J., ABRAMSON, CUNNINGHAM, NOBLE and SCHRODER, concur.

SCOTT, J., concurs in result only by separate opinion.

SCOTT, Justice, concurring in result only opinion:

I concur in the result of the majority's opinion, but would add as to Issue III, that the amount of any offset is limited to the BRB actually "paid or payable"—meaning it has been, or will be paid. There is no offset for amounts that will not be paid. Such an effect was never the intention of KRS 304.39–060(2). *See Slone v. Caudill,* 734 S.W.2d 480 (Ky.App.1987); and *Henson v. Fletcher,* 957 S.W.2d 281 (Ky.App. 1997).