**FRESENIUS MEDICAL CARE HOLDINGS, INC.,**
Appellant

v.

Tamorah MITCHELL; Hon. Douglas W. Gott, Administrative Law Judge; and Workers' Compensation Board, Appellees

and

Tamorah Mitchell, Appellant

v.

Fresenius Medical Care Holdings, Inc.; Hon. Douglas W. Gott, Administrative Law Judge; and Workers' Compensation Board, Appellees

NO. 2015-CA-000598-WC, NO. 2015-CA-000599-WC

Court of Appeals of Kentucky.

AUGUST 26, 2016; 10:00 A.M.

Rehearing Denied December 12, 2016

BRIEF FOR APPELLANT: F. Allon Bailey, Patrick J. Murphy, Lexington, Kentucky

BRIEF FOR APPELLEE: Craig Housman, Paducah, Kentucky, Dwight T. Lovan, Frankfort, Kentucky

BEFORE: JONES, D. LAMBERT, AND THOMPSON, JUDGES.

## OPINION

### D. LAMBERT, JUDGE:

This matter is before the Court following petitions for judicial review by two parties of rulings by the Workers' Compensation Board and the Administrative Law Judge ("ALJ") to whom it remanded the matter. The Appellant in the first appeal, 2015-CA-000598-WC, is the employer, Fresenius Medical Care Holdings, Inc. (hereinafter "Fresenius"). The Appellee in the first appeal, and the Appellant in the second appeal, 2015-CA-000599-WC, is the injured employee, Tamorah "Tammy" Mitchell.

The Court will address both appeals in a single opinion as they have a common nucleus of operative fact and require the same standards of appellate review.

### I. FACTUAL AND PROCEDURAL HISTORY

The facts giving rise to the petitions originated in November 2009, when Mitchell was in her personal vehicle returning home to Paducah from a work-related meeting in Louisville. Mitchell's husband at the time, Todd Mitchell, drove while Mitchell rode in the front passenger seat. Traveling at an estimated 80-85 miles per hour, Todd swerved to avoid a deer in the road, overcorrected, and lost control. The Mitchells' vehicle struck another and rolled over an embankment several times before coming to rest. There was some question regarding whether Mitchell was wearing a seatbelt at the time.

Mitchell sustained several significant injuries in the wreck. She sustained multiple right tibial fractures, which required surgery that resulted in the aggravation of a previously dormant degenerative joint disease in her knee, in addition to leaving her with traumatic arthritis. She also suffered hematomas and seromas in her left lower leg, which required surgical evacuation, debridement, and skin grafting on multiple occasions, and also aggravated the previously dormant degenerative joint disease in her left knee. Mitchell also suffered an orbital "blowout" fracture which entrapped two ocular muscles, resulting in persistent double vision, eye pain, headaches, dizziness, and nausea.

The vehicle was covered by an insurance policy issued by Travelers Insurance, which is not a party to this appeal. The policy limited recovery for bodily injury of $250,000 per person. The policy also covered damages caused by uninsured and underinsured motorists in the amount of $250,000 each. Mitchell paid slightly more than half of the premium amount from her earnings.

Mitchell filed for divorce from Todd approximately six months after the accident, and also filed a civil action against him seeking damages resulting from his negligence. Mitchell later settled the civil action for the liability policy limits. Though the settlement release specifically noted that the settlement was not full satisfaction, it released Todd from further liability.

Mitchell participated in a benefit review conference ("BRC"), which resulted in an order resolving some claims and reserving others for later resolution by an Administrative Law Judge ("ALJ"). Mitchell's claim for workers' compensation benefits was approved for the right knee replacement surgery in an interlocutory opinion

by the ALJ on September 4, 2012. An orthopedist had recommended replacement of both knees, but he required Mitchell lose significant weight before he would perform the surgery. Consequently, Mitchell had lap band surgery and successfully lost over one hundred pounds. The matter was placed in abeyance while she continued to lose weight and consider the left knee replacement, which the ALJ had determined was not ripe for decision. On September 27, 2013, during this period of abeyance, she experienced another work-related injury, this time a broken right ankle. As required by Kentucky Revised Statutes (KRS) 342.270(1), the ankle claim was consolidated with her preexisting unresolved claims for workers' compensation benefits. Having already undergone multiple surgeries and infection abatement procedures on her knees, and carefully considering the risks, Mitchell later elected not to undergo the knee replacement surgeries.

On August 8, 2014, the ALJ issued an Opinion, Award, and Order resolving the reserved issues, as well as addressing the issues presented in the BRC and interlocutory order again. In that order, the ALJ made findings and conclusions on several issues, but this appeal only pertains to four issues. The first issue is Mitchell's impairment rating, which the ALJ concluded was 51%, based primarily on the testimony of Dr. Warren Bilkey. The second issue was whether Fresenius was entitled to a statutory reduction in the benefits awarded to Mitchell based on her failure to wear a seatbelt, which the ALJ declined to impose. The third issue was the calculation of Mitchell's permanent partial disability ("PPD") benefits. The final issue was whether Fresenius was entitled to a subrogation credit against Mitchell's tort recovery, and, if so, the calculation thereof. The ALJ determined that Fresenius was not, as a matter of law, entitled to subrogation credit, but nevertheless proceeded to perform calculations related to the amount of the subrogation credit.

Both parties moved the ALJ to reconsider. The ALJ issued another ruling, though the only change made by the ALJ was to increase the length of time for which Mitchell would be entitled to future lost wages in PPD, and then recalculate the total award accordingly.

Both parties then appealed different aspects of the ALJ's ruling to the Workers' Compensation Board (hereinafter "the Board"). The Board reversed and remanded the ALJ's ruling as it related to Mitchell's impairment rating. The Board affirmed the ALJ's ruling as it related to the denial of the reduction of benefits for failure to wear a seatbelt. The Board reversed on the issue of Fresenius's entitlement to a subrogation credit and also as to the calculation thereof. These appeals followed.

## II. ANALYSIS

### A. STANDARD OF REVIEW

■■ The standard of appellate review of an administrative decision is a very deferential one. "On appeal, our standard of review of a decision of the Workers' Compensation Board 'is to correct the Board only where the. . . Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice.'" *Pike County Bd. of Educ. v. Mills*, 260 S.W.3d 366, 368 (Ky.App.2008) (quoting *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687–688 (Ky.1982). A claimant bears the burden of proving every element of a workers' compensation claim. *Id.* (citing *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735 (Ky.App.1984).

When reviewing a workers' compensation claim, KRS 342.285 designates the ALJ as the fact-finder. KRS 342.285(1). This provision has been construed to grant the ALJ "the sole discretion to determine the character, quality, weight, credibility, and substance of the evidence, and to draw reasonable inferences from the evidence." *Bowerman v. Black Equipment Co.*, 297 S.W.3d 858, 866 (Ky.App.2009). Though KRS 342.285(2)(d) establishes a clear error standard of review for findings of fact, the Board should not "substitute its judgment for that of the [ALJ] as to the weight of evidence in questions of fact[.]" *Id.* (quoting *Shields v. Pittsburgh & Midway Coal Mining Co.*, 634 S.W.2d 440, 441 (Ky.App.1982). An ALJ is entitled to believe or disbelieve all or parts of the evidence presented for review. *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15 (Ky.1977). "In short, appellate courts may not second-guess or disturb discretionary decisions of an ALJ unless those decisions amount to an abuse of discretion." *Bowerman*, at 866 (citing *Medley v. Bd. of Educ., Shelby County*, 168 S.W.3d 398, 406 (Ky.App.2004)). "If the reviewing court concludes the rule of law was correctly applied to facts supported by substantial evidence, the final order of the agency must be affirmed." *Kentucky Unemployment Ins. Comm'n v. Cecil*, 381 S.W.3d 238, 246 (Ky.2012) (citing *Brown Hotel Co. v. Edwards*, 365 S.W.2d 299 (Ky.1962)). However, a reviewing court is entitled to substitute its judgment for that of the agency where the agency's ruling is based on an "incorrect view of the law." *Kentucky Bd. of Nursing v. Ward*, 890 S.W.2d 641, 642 (Ky.App.1994).

## B. APPEAL NO. 2015-CA-000598-WC

Fresenius appeals two of the Board's rulings. Fresenius's first assignment of error is the ruling of the Board which reversed and remanded the ALJ's finding that the impairment rating as it related to Mitchell's eye injury as insufficiently supported. The second error alleged by Fresenius is the Board's affirmation of the ALJ's finding that Mitchell's alleged failure to wear a seatbelt did not merit a reduction in benefits under KRS 342.165(1).

## 1. THE BOARD EXCEEDED ITS AUTHORITY IN REMANDING THE MATTER TO THE ALJ ON THE ISSUE OF IMPAIRMENT RATING ASSOCIATED WITH THE EYE INJURY

The evidence presented to the ALJ on the issue of Mitchell's impairment rating consisted of multiple witnesses. Mitchell testified that she experienced double vision, which had worsened over time. Mitchell's medical expert, Dr. Warren Bilkey, a physical rehabilitation specialist, testified to both her lower extremity impairment and her visual impairment. However, it was Bilkey's testimony concerning the impairment resulting from the eye injury which gave rise to the controversy.

Bilkey testified that he had reviewed the conclusions of another physician, an ophthalmologist, Dr. Taylor,[1] in making his own assessment of Mitchell's total body disability. Bilkey's testimony indicated that Taylor's report reflected a "20% vision disability," which is not a recognized impairment rating under the American Medical Association's published guidelines for assessing impairment levels. Bilkey concluded that Taylor intended to rate the impairment at a 20% total body impairment, and factored it into his assessment. Bilkey ultimately concluded that Mitchell's total body impairment was 61%.

---

1. As the Board pointed out in its opinion, Dr. Taylor's first name is unknown, as Dr. Taylor's report was never introduced into the record.

Though the evidence of Mitchell's ocular difficulties was undisputed, the ALJ found Bilkey's testimony as to the eye injury not to be credible owing to an "insufficient foundation" without further elaboration. Consequently, the ALJ did not factor Mitchell's visual impairment into its calculation establishing a 51% impairment rating.

The Board vacated the finding of 51% impairment and remanded the matter back to the ALJ. The Board first noted that under Rule 703 of the Kentucky Rules of Evidence, a testifying physician is entitled to rely on the findings of another physician. Bilkey was a competent physician, and his findings admissible, therefore Taylor's reports were not strictly necessary. The Board further noted that an ALJ must provide an adequate explanation for rejecting uncontroverted medical evidence, and the Board believed the ALJ in this instance had failed to do so. *Commonwealth v. Workers' Compensation Bd. of Ky.*, 697 S.W.2d 540 (Ky.App.1985).

■ This Court disagrees with the Board. While the record established an eye injury and permanent symptoms resulting therefrom, including loss of ocular motility and visual acuity, the ALJ justified the ruling on the basis that even Bilkey was unsure whether Taylor's assessment had been consistent with established AMA guidelines. The ALJ's ruling did reject the uncontested medical proof, but provided sufficient justification. The Board inappropriately substituted its judgment for that of the fact-finder when remanding the issue for further proceedings.

## 2. THE BOARD ACTED APPROPRIATELY WHEN AFFIRMING THE ALJ'S RULING AS IT RELATES TO THE PENALTY PROVISION OF KRS 342.165(1)

■ The evidence relating to whether Mitchell was wearing a seatbelt at the time of the accident can be described as inconsistent. Mitchell testified that she had been told she was wearing her seatbelt at the time. The accident report, which was introduced into the hearing record without objection by Fresenius, stated that she had been wearing her seatbelt. The evidence as to the nature of her injuries was inconsistent as well. Dr. Steven McCullough, Mitchell's primary care provider and her work supervisor, testified that she would have suffered the same injuries regardless of the seatbelt, due to the rollover nature of the crash. Fresenius's expert, Dr. Michael Voor, a professor of both biomedical engineering and medicine, testified Mitchell would not have sustained the right tibial fractures had she worn a seatbelt, and her facial and left leg injuries would have been "possible," but were "unlikely" to have been as severe. Neither is a trained accident reconstruction expert.

KRS 342.165(1) states, in relevant part, as follows:

If an accident is caused in any degree by the intentional failure of the employee to use any safety appliance furnished by the employer or to obey any lawful and reasonable order or administrative regulation of the commissioner or the employer for the safety of employees or the public, the compensation for which the employer would otherwise have been liable under this chapter shall be decreased fifteen percent (15%) in the amount of each payment.

Fresenius argued that Mitchell violated KRS 342.165(1) by an alleged violation of KRS 189.125(6). The ALJ found KRS 342.165(1) not to apply in this situation. Specifically, the ALJ found that any alleged negligence on the part of the employee in failing to wear a seatbelt does not give rise to the application of the pen-

alty provisions of KRS 342.165(1). The ALJ cited *Tetrick v. Frashure*, 119 S.W.3d 89 (Ky.App.2003), in which this Court held that KRS 189.125(6) did not impose a duty on passengers to wear seatbelts; it merely imposes a duty upon drivers to do so. Absent a duty, there can be no negligence.

The Board found the ALJ correctly applied the law, but also noted that, despite Fresenius's assertion to the contrary, the evidence reflected a factual dispute concerning whether Mitchell wore the seatbelt at all. As noted above, the cases of *Bowerman*, *Shields*, *Caudill*, and *Medley*, all support the proposition that the ALJ, as the fact-finder, is entitled to discretion when to afford appropriate weight to the evidence. The Board even went so far as to reason that the case law supported the ALJ's decision even assuming the factual findings were erroneous.

This Court entirely agrees with both the reasoning and the result of the Board's ruling.

## C. APPEAL NO. 2015-CA-000599-WC

In the second appeal before us, Mitchell seeks review of two rulings by the Board. She first argues that the Board erred in reversing the ALJ's ruling that Fresenius was entitled to a subrogation credit. The Board further erred in its calculation of the subrogation credit to which Fresenius would be entitled.

## 1. FRESENIUS IS NOT ENTITLED TO A SUBROGATION CREDIT AGAINST MITCHELL'S TORT RECOVERY

Subrogation in workers' compensation claims is governed by KRS 342.700, which states as follows:

> Whenever an injury for which compensation is payable under this chapter has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages, the injured employee may either claim compensation or proceed at law by civil action against the other person to recover damages, or proceed both against the employer for compensation and the other person to recover damages, but he shall not collect from both.... If compensation is awarded under this chapter, the employer, his insurance carrier, the special fund, and the uninsured employer's fund, or any of them, having paid the compensation or having become liable therefor, may recover in his or its own name or that of the injured employee from the other person in whom legal liability for damages exists, not to exceed the indemnity paid and payable to the injured employee, less the employee's legal fees and expense.

KRS 342.700(1).

■ Mitchell argued before both the ALJ and the Board that Fresenius should not be entitled to a credit against her recovery in the civil action. Indeed, the Kentucky Supreme Court held in *State Farm Mut. Ins. Co. v. Fireman's Fund American Ins. Co.*, 550 S.W.2d 554 (Ky. 1977), that because an insured has no obligation to his or her employer's compensation insurance carrier to insure a personal vehicle, then the compensation insurance carrier has no right to the proceeds of the employee's personal policy. She also relied on two cases, which stand for the proposition that an employer is not entitled to subrogation for first-party tort settlements obtained from the injured employee's own personal insurance carrier. *Jewell v. Ky. School Bd. Ass'n*, 309 S.W.3d 232 (Ky. 2010), *G & J Pepsi–Cola Bottlers, Inc. v. Fletcher*, 229 S.W.3d 915 (Ky.2007).

Mitchell also advanced a policy-based argument that Todd should be considered

a first party within the meaning of KRS 342.700. This is consistent with long-standing common law doctrine of unity of person in marriages, whereby a "husband and wife... constitute[e] in law but one person." *Hoffman v. Newell*, 249 Ky. 270, 60 S.W.2d 607, 609 (1932); *Elliott v. Nichols*, 67 Ky. 502, 504 (Ky.868) ("Husband and wife, for most purposes, hav[e] but one united legal existence[.]" *See generally Nelson v. Mahurin*, 994 S.W.2d 10 (Ky. App.1998)). While Mitchell and Todd were not married at the time of the civil action, they were married at the time of the crash and share a child in common.

The evidence reflected that Mitchell paid the majority of the premiums securing the policy through their joint account, and it was not a benefit of her employment. The *Jewell* Court noted that "[a] payment made in performance of a contractual obligation is not a payment of 'damages.' Hence the liability of an insurance company under its uninsured motorist coverage cannot be the 'legal liability for damages' mentioned in [KRS 342.700(1)]." *Jewell* at 235, (quoting *State Farm*). The ALJ ruled as a matter of law that because this was a personal automobile liability policy, Fresenius was not entitled to a subrogation credit.

The Board, however, was not swayed by Mitchell's argument. It held that while KRS 342.700 permits an injured employee to pursue a tort claim against a third-party tortfeasor, it also prohibits the injured employee from obtaining a windfall by allowing the employer a credit against any elements of damage which would be duplicated in any workers' compensation recovery. KRS 342.700(1), *Krahwinkel v. Commonwealth Aluminum Corp.*, 183 S.W.3d 154, 158 (Ky.2005). Particularly, the Board noted that a workers' compensation carrier has a right to subrogation against benefits paid on behalf of a third-

party tortfeasor. *Zurich American Ins. Co v. Haile*, 882 S.W.2d 681 (Ky.1994), *Waters v. Transit Auth. of River City*, 799 S.W.2d 56 (Ky.App.1990).

We agree with Mitchell that Todd, for the purpose of the tort action, was a first-party insured rather than a third-party tortfeasor.

We therefore conclude that the Board incorrectly reversed the ALJ's ruling. The ALJ's ruling relied on case law applicable to the facts of the case and was thus not reversible error.

## 2. THE ISSUE OF CALCULATING THE SUBROGATION CREDIT IS MOOT

In light of this Court's conclusion that Fresenius is not entitled to a subrogation credit against Mitchell's tort recovery, the issue of calculating the value of that credit is moot, and any further analysis by the Court on this issue is obviated.

## III. CONCLUSION

This Court, having reviewed the record and finding no reversible error, we hereby AFFIRM IN PART, and REVERSE IN PART, the Board's ruling in Appeal No. 2015-CA-000598-WC, and REVERSE the Board's ruling in Appeal No. 2015-CA-000599-WC.

ALL CONCUR.